203 So.2d 271

**Willie Elmer WILLIAMS et al.**

**v.**

**Sarah Rebecca POPE.**

**2 Div. 501.**

Supreme Court of Alabama.

Oct. 12, 1967.

E. Brooks Glass, Jr., Linden, for appellants.

418

J. C. Camp, Linden, for appellee.

MERRILL, Justice.

This appeal is from a decree in equity, the effect of which was to dismiss appellants' petition for adoption of a child on the ground that the written consent of the child's mother was withdrawn.

On November 28, 1966, Sarah Rebecca Pope gave birth to her seventh child, Cynthia Kay Pope. Two days later, she executed a written consent to the adoption of her new baby by her first cousin, Willie Elmer Williams, and his wife Lucy. She had orally agreed that they might adopt the baby some two months before it was born. On December 1, 1966, the Williams filed a petition for the adoption of the baby in the Probate Court of Marengo County, with the "consent" attached as an exhibit to the petition. The Department of Pensions and Security was notified to make the investigation required by Tit. 27, § 2, Code 1940. On January 19, 1967, appellee, Sarah Rebecca Pope, filed a petition in the probate court to have her consent held for naught and to have it declared null and void. On February 3, appellants, the Williams, filed a motion to transfer the cause from probate to circuit court and the motion was granted the same day. (The question of the transfer is not raised on this appeal). Appellee's original petition was amended, appellants filed a cross-bill and the cause was heard on March 16, 1967.

The prayer of the amended petition reads:

"Wherefore, your Complainant prays that this Honorable Court will deny the petition for adoption by the Respondents and will hold for naught the consent here-

tofore filed, and will dismiss the petition for adoption heretofore filed by the Respondents in this cause, and will return the said minor child to her natural parent, your Complainant, and Complainant prays for any further and additional relief to which she may be entitled."

The trial court was "of the opinion that the Complainant is entitled to the relief prayed for in said Petition as last amended" and ordered that the custody of the baby be restored to its natural mother, that it be delivered to her immediately, and that appellee should have the custody during the pendency of an appeal, if taken. An appeal was taken and this court ordered that the decree be suspended pending appeal upon appellants executing and filing a bond in the amount of $1,000.00. The effect of this order was to permit the Williams to retain custody of the baby pending the appeal.

Appellee had been separated from her husband since 1957 and, at trial, testified that she had not lived with him sexually since 1957, but that she had had three children since then. The ages of her children were 14, 13, 11, 9, 7, 4 and the 4 month old baby here involved. The Williams lived in Houston, Texas. In September, 1966, appellee's mother wrote her sister, Willie Williams' mother, a letter, the pertinent part of which reads:

" * * * 'I wanted to tell you something when I was there and didn't have a chance, so here I come with it. Rebecca is pregnant again, about five months. I don't know what I have done so bad for the Lord to punish me so. I can't take it. I didn't want you to be so disappointed when you come. That's why I'm telling you. It took me this long to get up the nerve. Maybe Lucy and Willie can get it, for I'm not raising another one. I mean it this time.' * * * "

Later in September, Willie Williams and his wife, while on vacation, visited their relatives in Marengo County and various relatives urged them to ask appellee for her then unborn baby. Williams refused, testifying; "I couldn't ask no person to give up their baby. I know I wouldn't if I had one." But he testified that on the morning he and his wife were returning to Texas:

" * * * Rebecca asked us if we would take her baby. We'd been married twelve years and had no children, and it just overcame us, and we actually cried and told her we would be glad to and told her, 'May God bless you.' "

The Williams made their plans to move back to Marengo County and had returned when the baby was born. Appellee asked them to go to her attorney and have him to prepare her consent to the adoption and a release for her to sign to the hospital to release the baby to appellants. These were prepared by her attorney and on November 30, 1966, appellee signed the following in the presence of two witnesses and a Notary Public:

"CONSENT OF PARENT TO ADOPTION

"KNOW ALL MEN BY THESE PRESENTS: That I, Sarah Rebecca Pope, the mother of Cynthia Kay Pope, a minor, born November 28, 1966, who reside in Dixons Mills, Alabama, do hereby consent to the adoption of my said child by Willie Elmer Williams and Lucy Henry Williams, in order that said child may have all the privileges which may be accorded to her by the laws of Alabama upon her legal adoption. And I do hereby consent and request that the Probate Judge make all such orders and decrees as may be necessary or proper to legally effectuate said adoption.

"I further certify that my husband, Sidney Russell Pope, has abandoned me and I do not know where he is."

The evidence is undisputed that appellants are good and loving parents to the baby and are capable of providing for her needs and have done so generously.

Appellee testified that the reason she offered her baby to appellants and signed the consent for adoption was: "Due to the circumstances, the way things stood, I was upset and felt I had to get rid of it. I felt like I couldn't support or take care of it." At the time she offered the infant to appellants, appellee was making $50.00 a week take home pay. This has since increased to $56.00 a week. Appellee lives in a four room concrete block house. Two of the rooms are bedrooms. Appellee's six children live with her. There was no testimony to the effect that her husband helped her financially, in any way, or that the father or fathers of her four youngest children, including Cynthia Kay, contributed in any manner to appellee's financial support.

Appellee's parents live "right beside of her." Appellee's father testified that he furnished his daughter and her children with gas for heating and cooking, milk, garden vegetables and bought them groceries whenever they needed any. He promised to continue helping appellee's family. Several of appellee's relatives promised to either continue helping or start helping appellee and her children. It is evident from the record that appellee is dependent on her parents and relatives.

We also find it noteworthy that despite the fact that appellee and appellants live near each other in the same rural community that between November 28, 1966 and January 19, 1967, appellee visited the baby only one time. There was no testimony that prior to January 19, 1967, appellee was advised or asked not to visit the child.

Several witnesses who knew both the appellants and the appellee testified that, in their opinion, it would be in the best interest of Cynthia Kay to remain with appellants. Several of appellee's relatives testified that in their opinion, the child should be with its mother. Appellee's sister testified, " * * * If she can take care of six children, I'm sure she can take care of seven."

■ In cases where the custody of a minor child is presented, the pole star guide is the present and future welfare and interest of the child. Kennedy v. State Dept. of Pensions & Security, 277 Ala. 5, 166 So. 2d 736; Harris v. Harris, 251 Ala. 687, 39 So.2d 232; Findley v. Jones, 214 Ala. 325, 107 So. 840.

The trial court assigned no reason for the holding in this case. After a careful study of the record, we can find only two reasons to justify the decree: first, that the trial court felt that the withdrawal of the natural mother's consent vitiated the adoption proceedings because consent is required by statute; or second, because of some undivulged report, communication or conversation between representatives of the Department of Pensions and Security and the trial court. Those points are raised by argued assignments of error. We discuss them in the order listed.

Our research has revealed no case in this State specifically deciding the effect of a revocation of consent because of a change of mind by the natural parent after having given written consent to an adoption.

Title 27, § 3, Code 1940, requires consent of parents for adoption except in certain cases, but our statutes are silent as to the revocation of consent.

In 2 Am.Jur.2d, Adoption, § 46, p. 897, we find:

"In many jurisdictions the right of a parent to withdraw a consent to the adoption of a child is controlled and limited by the provisions of the adoption statutes themselves, and aside from express statutory provisions the trend of modern authority is toward the position that a parent who has freely and knowingly given the requisite consent to the adoption of his or her child cannot, after that consent has been acted upon by the adoptive parents by bringing adoption proceedings, withdraw that consent arbitrarily, or as of right so as to bar the court from decreeing adoption. This is

particularly true where, in reliance upon such consent, the proposed adopting parents have taken the child into their custody and care for a substantial period of time and bonds of affection have been forged between them and the child."

To like effect, see 2 C.J.S. Adoption of Children § 21(4), Pocket Part note 15.1; Annotation 156 A.L.R. 1011. We quote the following from In re Holman's Adoption, 80 Ariz. 201, 295 P.2d 372, 376, where it was noted that the courts are divided on the question, and cases from other jurisdictions are cited:

"The direct question of whether this consent is revocable is of first impression in this court. In view of our holding, however, that the best interest of the child is the paramount consideration of the court and in view of our interpretation of section 27–203, supra, relating to consent we hold that a consent once given by the parent or other persons having the authority to give such consent, may not be revoked *after the child has been placed in the possession of the adoptive parents except for legal cause shown,* as where such consent was procured through fraud, undue influence, coercion or other improper methods. Provided always, however, that the court may permit said revocation where upon hearing, it is shown that it will be for the best interest of the child that it be returned to its natural parents. Or if there are no parents, if it appears upon hearing that the best interest of the child will not be promoted by its adoption by the proposed adoptive parents, the adoption will be denied."

This holding is in accord with Tit. 27, § 4, which provides that "At any time before the entry of such final order of adoption, (at least six months after the interlocutory order) the court may revoke its interlocutory order for good cause, either of its own motion or on the motion" of the agents of the department, the natural parents or the adoptive parents.

The only reason given by appellee in her petition for the attempted revocation of consent for adoption was that "at the time she gave her consent, which was shortly after the birth of said child, she was emotionally upset, and had she not been under emotional strain, she would not have signed said consent." That same reason was insisted upon in In re Surrender of Minor Children, 344 Mass. 230, 181 N.E.2d 836, and the court answered as follows:

"Contemplation of the surrender of one's own child is in many, if not all, cases a cause of emotional and mental stress. Many such surrenders are undoubtedly by mothers of children born out of wedlock and are contemplated because the trying circumstances tend to show that the welfare of the child calls for action at variance with that dictated by natural instincts of maternal love and affection. No statute has said that surrenders are valid only if executed free from emotion, tensions, and pressures caused by the situation. No principle of law requires the rule. A balance of the interests of the persons concerned and of society weighs strongly against it."

 We hold that no legal cause has been shown to justify the attempted revocation of consent and we are not convinced from the evidence in the record that it will be to the best interest of the child that it be returned to its mother.

We come now to the question of the admissibility of the report of the investigation made by the case worker of the Department of Pensions and Security, and the right to examine her as a witness as to her findings and recommendations. The rulings of the court are subjects of argued assignments of error.

 Appellants called as a witness, Mrs. Betty Powell, a case worker in Marengo County. She stated that she asked the mother, appellee, if she was fully aware and cognizant of the import of the consent to

adoption, but she evaded testifying as to the answer by saying she did not have her file with her, and without it, she could not say exactly what was said. Counsel requested the court to let her get her file but the court refused. Counsel then stated that he wanted to ask her about the character of the Williams, the adoptive parents, based upon her investigation. Then this incident occurred. The Director of the Marengo County Department of Pensions and Security, who was sitting in the courtroom, stated that she would not permit the witness to answer those questions because they were confidential. The trial judge ruled that the witness did not have to answer the question. The record on this matter reads:

"MR. GLASS: On that point now, I want to ask her as to the character of my clients from her investigation.

"(At this point, Mrs. A. H. Woolf, Director of the Marengo County Department of Pensions and Security, who was sitting in the court room, interrupted, stating that she would not permit the witness to answer those questions, that those matters were confidential.)

"THE COURT: As the Court told you, I expect to consult with Mrs. Woolf and her Department before making a decision. I want a complete report on the homes of both parties, and she will make her recommendation to me, which will be confidential, and I will base my decision on the facts submitted here, my understanding of the law and the report of the Welfare Department.

"MR. GLASS: Are you refusing to allow me to question this field worker as to what her investigation reveals relative to the character of my clients?

"THE COURT: I don't think you should do that. I don't believe the Department of Pensions and Security can perform the services and render to the Court the judgment it should have on it if this is to be made a public report in the case. What they give to me, I expect to be confidential, and I will do that in all cases where the welfare of children is concerned. I think they are able to perform a better job under those circumstances.

"MR. GLASS: Then I can't question the field worker as to her bias in the case? I can not ask the field worker any questions in connection with her investigation in this case?

"THE COURT: I think it is better for you not to. I think they can perform their responsibility to the Court better if what they tell the Court is a matter of confidence.

"MR. GLASS: Then I will not be allowed to see the report?

"THE COURT: Yes sir. The Court will allow you to see it, but I don't think it should be made a public record."

We find no Alabama statute or case law supporting the ruling of the trial court.

Title 27, § 2, places the duty on the Department "to make a thorough investigation of the matter and to report its findings in writing to the court. The report shall show among other things: Why the natural parents, if living, desire to be relieved of the care, support and guardianship of such child; whether the natural parents have abandoned such child or are morally unfit to have its custody; whether the proposed foster parent or parents, is or are financially able and morally fit to have the care, supervision and training of such child; the physical condition and also the mental condition of such child insofar as this can be determined. Upon the day so appointed the court shall proceed to a full hearing of the petition and the examination of the parties in interest, under oath, with the right of adjourning the hearing and examination from time to time as the nature of the case may require. If the report of the state department of public welfare or its duly authorized agents, as provided herein, disapproves of the adoption of the child,

motion may be made to the court to dismiss the petition."

■ These matters to be included in the report are similar to those always arising in custody cases, and they are matters which the Department must investigate and report on to the court in writing. While the sources of the information may remain confidential, the report itself is not confidential as between the litigants, the trial court or this court on appeal. We have said that the report of the Department of Pensions and Security of its investigation under Tit. 27, § 2, in adoption cases is analogous to a Master's Report in a court of equity, which is a matter of record and is accorded the weight of the verdict of the jury. Claunch v. Entrekin, 272 Ala. 35, 128 So.2d 100.

It is certain that the parties are entitled to know what is in the report because the motion to dismiss the petition on the ground that the Department disapproved of the adoption of the child could not otherwise be made. The last sentence of Tit. 27, § 2 appears in the Tennessee Act, and the Supreme Court of that State said the investigation of skilled social workers may be of great value to the tribunal having the power of adoption, but under the statute, does not afford the right of veto to the proposed adoption; but the disapproval by it merely raises an issue as to the welfare of the child. Young v. Smith, 193 Tenn. 480, 246 S.W.2d 93. In that case, a case worker for the Department was not permitted on cross-examination to give, on the basis of her investigation, her opinion as to what would be for the best interest of the child. The trial court's reason was: "I don't think that it would be proper evidence. I have her report on that."

The Supreme Court of Tennessee approved statements that "Courts of Star Chamber have long since passed into oblivion."; and "If courts are to remain open, and if our law is not to judge any man before it hears him, it must follow that any matter which has any evidential value must be submitted through the orderly processes of the court and available to the litigants and their counsel. Consequently, these recommendations should have been received openly, and considered for whatever they might be worth in the light of the testimony in the case." In that case, the report was given to the trial judge and sent to the appellate court in a sealed envelope and was read and considered by the court. But the appellate court stated it could not follow the recommendations of the Department and approved the adoption over the protests of the natural mother and the Department of Public Welfare.

This court said in Danford v. Dupree, 272 Ala. 517, 132 So.2d 734: "In dealing with such a delicate and difficult question—the welfare of a minor child—due process of law in legal proceedings should be observed."

The report of the Department was introduced in evidence in Griggs v. Barnes, 262 Ala. 357, 78 So.2d 910; Claunch v. Entrekin, 272 Ala. 35, 128 So.2d 100, and Department of Pensions and Security v. Simms, 275 Ala. 61, 152 So.2d 126. In the last cited case, although the opinion does not so state, the original record shows that the full time attorneys for the Department of Pensions and Security offered in evidence the "Report of Lawrence County Department of Pensions and Security" which disapproved the petition and contained a motion to dismiss as provided for in Tit. 27, § 2. It was also stipulated that an affidavit of the Director of the Bureau of Child Welfare, State Department of Pensions and Security, in which she detailed her reasons and those of the Department for disapproving the petition for adoption, would be admitted in evidence.

The U.S. Court of Appeals, D.C., has held such reports to be admissible. In In re Adoption of a Minor, 79 U.S.App.D.C. 191, 144 F.2d 644, 156 A.L.R. 1001, that court said:

"When the case is remanded the trial court will require new reports from the guardian and from the Board of Public

Welfare, together with such other information and advice as may be available. Evidence of this character is just as necessary and just as admissible in the present case as is opinion evidence upon any other issue triable in a court of law. This is exactly the kind of evidence which is contemplated by the statute. * * *"

 We are aware that Tit. 27, § 5 provides that the "files and records of the court in adoption proceedings shall not be open to inspection, or copy, by other persons than the parties in interest and their attorneys, and representatives of the state department of pensions and security, except upon an order of the court expressly permitting the same," and a similar provision relates to adoption papers filed with the registrar of vital statistics of the Department of Health, Tit. 27, § 4. But all the litigants in an adoption proceeding are entitled to know all the evidence that is considered by a court in arriving at a judicial determination. Concededly, some evidence in an adoption proceeding possibly should not be made public, but the trial judge could recess a hearing to his chambers to hear such evidence, or if a part of the report should not be considered, it could be excluded. But the report and recommendations of the Department is admissible and is not a private matter of consultation between the trial court and agents of the Department. And, certainly, the agents of the Department are subject to cross-examination as to their recommendations.

Based upon the evidence in this record, we would hold that the overwhelming evidence in this case would support a decree in favor of the adoption. But since the trial court improperly excluded evidence required by the statute to be introduced and considered, whether acted upon or not, the decree must be reversed and the cause remanded. Owing to the nature of this case, it will not be necessary for the same testimony in the present record to be retaken, at another trial, but if the trial court so de-

sides, the evidence may be limited to the introduction of the report required by Tit. 27, § 2, Code 1940, the cross-examination of the agent or agents who conducted the investigation, and any pertinent rebuttal.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.