PER CURIAM.
This is the second time this sensitive matter has been before this Court. In Ex Parte Shuttleworth, 410 So.2d 896 (Ala.1981), three issues were presented:
(1) Whether an unwed father was entitled to notice of a proceeding to terminate parental rights; and, if so
(2) Was proper notice extended to the father in this case?
We held that the unwed father was entitled to notice and that he had not been afforded proper notice in this case in that Rule 4.1(c)(2), Alabama Rules of Civil Procedure, was not complied with.
The third issue addressed but not decided was whether the unwed father had knowingly consented to adoption and whether the parents of the child had otherwise waived their rights to the child. We directed the Court of Civil Appeals to remand the cause to the family court of Jefferson County for a determination of this issue.
As we have often noted, cases involving competing claims to young children are among the most difficult the Court is called upon to decide. The poignant facts in this case point out some of the reasons for that difficulty.
These young college students had an affair which resulted in Deborah’s pregnancy. *266 Matthew wanted to get married and legitimate the child. Deborah consulted a Ms. Dinwitty with the Catholic Services Agency and told her that Matthew was opposed to placing the child for adoption, but Deborah apparently, at the time, preferred to relinquish the child for adoption.
Matthew claims that he never consented and, indeed, the facts in the first case seem to support his claim, but that is one of the issues to be decided by the family court on remand.
In the meanwhile, pursuant to the family court’s original order committing the child to the Catholic Social Services for permanent adoption, the baby girl has been taken into the home, and no doubt the hearts, of the proposed adoptive parents. It must seem to them, and to all people who find themselves in their position, manifestly unfair to allow the natural parents to change their minds and to take the child they have grown to love away. It is unfair, and a mere change of mind cannot justify the rescission of a decision to place a child for adoption if the natural parents have given an informed, intelligent consent and all the procedural safeguards have been followed. This has been made explicit by this Court in Williams v. Pope, 281 Ala. 416, 203 So.2d 271 (1967), where the following appears:
“Our research has revealed no case in this State specifically deciding the effect of a revocation of consent because of a change of mind by the natural parent after having given written consent to an adoption.
“Title 27, § 3, Code 1940 [now § 26-10-3, Ala.Code 1975], requires consent of parents for adoption except in certain cases, but our statutes are silent as to the revocation of consent.
“In 2 Am.Jur.2d, Adoption, § 46, p. 897, we find:
“ ‘In many jurisdictions the right of a parent to withdraw a consent to the adoption of a child is controlled and limited by the provisions of the adoption statutes themselves, and aside from express statutory provisions the trend of modern authority is toward the position that a parent who has freely and knowingly given the requisite consent to the adoption of his or her child cannot, after that consent has been acted upon by the adoptive parents by bringing adoption proceedings, withdraw that consent arbitrarily, or as of right so as to bar the court from decreeing adoption. This is particularly true where, in reliance upon such consent, the proposed adopting parents have taken the child into their custody and care for a substantial period of time and bonds of affection have been forged between them and the child.’
“To like effect, see 2 C.J.S. Adoption of Children § 21(4), Pocket Part note 15.1; Annotation 156 A.L.R. 1011. We quote the following from In re Holman’s Adoption, 80 Ariz. 201, 295 P.2d 372, 376, where it was noted that the courts are divided on the question, and cases from other jurisdictions are cited:
“ ‘The direct question of whether this consent is revocable is of first impression in this court. In view of our holding, however, that the best interest of the child is the paramount consideration of the court and in view of our interpretation of section 27-203, supra, relating to consent we hold that a consent once given by the parent or other persons having the authority to give such consent, may not be revoked after the child has been placed in the possession of the adoptive parents except for legal cause shown, as where such consent was procured through fraud, undue influence, coercion or other improper methods. Provided always, however, that the court may permit said revocation where upon hearing, it is shown that it will be for the best interest of the child that it be returned to its natural parents. Or if there are no parents, if it appears upon hearing that the best interest of the child will not be promoted by its adoption by the proposed adoptive parents, the adoption will be denied.’
*267 “This holding is in accord with Tit. 27, § 4 [now § 26-10-4, Ala.Code 1975], which provides that ‘At any time before the entry of such final order of adoption, (at least six months after the interlocutory order) the court may revoke its interlocutory order for good cause, either of its own motion or on the motion’ of the agents of the department, the natural parents or the adoptive parents.”
281 Ala. at 420-421, 203 So.2d 271.
While this case arises in the context of an effort by the natural father to set aside a judgment of the family court terminating his parental rights, the same rules should apply.
In this case, the Catholic Social Services Agency of Huntsville, through the actions of Ms. Dinwitty, must share much of the responsibility for the emotional trauma suffered by both the natural and the proposed adoptive parents. The carelessness with which rights so precious as these appear to have been handled is inexplicable. We regret any additional pain that any party must bear, but we must take the case as it is presented to us.
On remand to the family court, Matthew and Deborah Shuttleworth sought to determine through discovery the whereabouts of the child, including the identity of the proposed adoptive parents and any other person who has custody or control of. the child. The Catholic Family Services Agency sought a protective order to prevent that discovery. The trial court denied the protective order and granted the motion for a disclosure. The Catholic Family Services Agency filed a petition for mandamus with the Court of Civil Appeals, which was granted on August 3, 1982, which had the effect of directing the family court to grant the protective order and thereby preserve the anonymity of the proposed adoptive parents. The Shuttleworths then filed this petition for mandamus in this Court.
We hereby grant the petition and hold that the family court did not abuse its discretion in denying the protective order sought by Catholic Family Services Agency. The natural parents, because of the peculiar facts of this case, are entitled to learn through discovery any information in the possession of the Catholic Social Services Agency which might bear on the issue of whether the father waived his parental rights and whether the representatives of that agency misinformed the court in that regard. Whether the disclosure of the identity of the proposed adoptive parents will be allowed is a matter within the family court’s discretion in view of the peculiar facts of this case. Ordinarily, however, the identity of proposed adoptive parents is not discoverable in a proceeding to rescind an adoption or to set aside an order terminating parental rights. We simply hold that, in view of the peculiar handling of this case by the social agency involved, broad discovery by the family court does not constitute an abuse of its discretion.
WRIT GRANTED.
JONES, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
TORBERT, C.J., and FAULKNER, J, dissent.