This is an adoption case.
Appellant, Donna Milner Wolf, is the natural mother of Zachary Michael Smith (formerly James Zachary Milner). At the time of Zachary's birth, Mrs. Wolf was not married, and Mrs. Wolf's husband is not the natural father of Zachary. Zachary was adopted by Michael and Ann Smith by decree of the Shelby County Probate Court. Mrs. Wolf appeals that decree and the judgment of the probate court denying her petition to set aside the consent to adoption and petition to dismiss the petition for adoption.
Zachary was born March 30, 1979, in Mobile, Alabama. Shortly thereafter Mrs. Wolf went to Texas, and on June 22, 1979, she and Mr. Wolf were married. Mr. and Mrs. Wolf were divorced in November 1980.
After the divorce Mrs. Wolf had some financial difficulties, and Zachary was placed in a foster home for about three weeks. In April of 1981 Mrs. Wolf called her friend in Alabama, Linda Weaver, and told her that she was considering giving Zachary up for adoption. Mrs. Weaver told Mrs. Wolf of a couple she knew, Mr. and Mrs. Smith, who wanted to adopt. Mrs. Weaver then called the Smiths and told them about Zachary and Mrs. Wolf. Sam R. Shannon, Jr., the Smiths' attorney, called Mrs. Wolf and subsequently sent airline tickets to her for her and Zachary to fly to Birmingham.
Mrs. Wolf and Zachary arrived in Birmingham on April 14, 1981. Mr. Shannon met them at the airport where he discussed *Page 751 
the planned adoption with Mrs. Wolf and had her sign a consent to adoption form. The form was signed with the spaces provided for the names of the child and of the adopting parents left blank. Mr. Shannon's secretary later notarized the form, outside the presence of Mrs. Wolf, and the blanks were filled in after the notarization. After signing the form, Mrs. Wolf left Zachary with Mr. Shannon, who gave him into the possession of the Smiths. Zachary has been with the Smiths since that date.
On April 13, 1981, one day before Zachary's arrival in Birmingham, the Smiths signed a petition for adoption. On June 25, 1981, Mr. and Mrs. Wolf were remarried, and on July 3, 1981, Mrs. Wolf filed her petitions to dismiss the petition for adoption and to set aside the consent to adoption. On December 18, 1981, Mrs. Wolf's petitions were denied.
Mrs. Wolf appealed the ruling of the probate court to the Court of Civil Appeals, and we dismissed the appeal as premature. Wolf v. Smith, 414 So.2d 129 (Ala.Civ.App. 1982). The case is now before us following a final order of adoption.
Mrs. Wolf contends the probate court improperly issued the order of adoption on two grounds: (1) the consent to adoption signed by Mrs. Wolf was void ab initio because it contained blanks which were later filled in outside of her presence; (2) the Smiths failed to obtain the consent of the Department of Pensions and Security (DPS) before bringing Zachary into the state as required by § 38-7-15, Code of Alabama 1975. We shall first discuss the issue of Mrs. Wolf's consent.
Section 26-10-3, Code 1975 (Supp. 1982), states: "No adoption of a minor child shall be permitted without the consent of parents. . . ." Mrs. Wolf contends the consent signed by her on April 13, 1981, is void because of the various irregularities in its notarization. However, as was pointed out in Davis v.Turner, 337 So.2d 355, 360 (Ala.Civ.App.), cert. denied,337 So.2d 362 (Ala. 1976), the consent form is "merely a memorandum preserving that consent for later uses." The statute does not specify a form for the consent, does not require notarization, and does not require that the consent be in writing. Thus, the proper question before the probate court, and before us now, is whether Mrs. Wolf consented to the adoption; not whether the form was properly filled out and notarized.
It is uncontradicted that Mrs. Wolf orally consented to the adoption of Zachary by the Smiths at the time she signed the form. Although information was added to the consent form after Mrs. Wolf's signing, the form when completed was in all respects in accord with the oral understanding of the parties.
Mrs. Wolf also contends that the irregularities in the execution of the consent form are grounds for revocation of the consent. In Williams v. Pope, 281 Ala. 416, 203 So.2d 271
(1967), the Supreme Court of Alabama adopted the rule of revocation of consent as stated in In re Holman's Adoption,80 Ariz. 201, 295 P.2d 372, 376 (1956):
 "[A] consent once given by the parent or other persons having the authority to give such consent, may not be revoked after the child has been placed in the possession of the adoptive parents except for legal cause shown, as where consent was procured through fraud, undue influence, coercion or other improper methods."
None of the irregularities in the consent form constitute fraud, undue influence or coercion, and none relate to the procuring of the consent. The allegations of wrongdoing relate to the written form, which is merely a "memorandum" of Mrs. Wolf's consent. Davis v. Turner, supra. We hold that there was evidence presented from which the probate court could find the consent to be valid and not revocable.
Mrs. Wolf further contends the consent should be revoked because of the willful misstatement as to the residency of the child at the time of filing the petition for adoption. She contends such misstatement constitutes "legal cause shown."Williams v. Pope, supra. However, as in the case of *Page 752 
the irregularities in the form discussed above, the misstatement does not constitute fraud, undue influence or coercion, and does not relate to the procuring of her consent. Furthermore, the misstatement was later deleted by an amendment to the petition.
The second ground for reversal of the probate court's order contended by Mrs. Wolf involves the Smiths' failure to obtain the consent of DPS before bringing Zachary into Alabama as required by § 38-7-15, Code 1975. Section 38-7-15 (a) provides in pertinent part:
 "No person or agency shall bring or send any child into the state of Alabama for the purpose of placing him or procuring his adoption or placing him in any child-care facility, as defined herein, without first obtaining the consent of the department. The department shall have the power to impose and enforce reasonable conditions precedent to the granting of such consent. Such conditions shall be for the purpose of providing the same care and protection for the child coming into the state of Alabama for placement or adoption as are afforded to a child who is born in the state of Alabama. . . ."
The requirements of the adoption statutes must be closely adhered to. Davis v. Turner, supra; Ex parte Sullivan,407 So.2d 559 (Ala. 1981). However, where the custody of a minor child is at issue, "the pole star guide is the present and future welfare and interest of the child." Williams v. Pope,281 Ala. at 420, 203 So.2d at 274. With these principles in mind, we must now consider the proper weight and effect to be given to the Smiths' failure to comply with § 38-7-15.
A careful reading of § 38-7-15 reveals that the obvious purpose of the statute is to insure a full disclosure of all pertinent information on a child being brought into Alabama for adoption. Only by such a disclosure can the best interests and welfare of the child be protected. Such a disclosure was had in the present case, despite the Smiths' failure to contact DPS before accepting Zachary into the state. The mother, in fact, brought the child into the state for the purpose of giving him up for adoption. It might well be questioned whether she should now seek benefit of the statute.
Paragraph (1) of § 38-7-15 (a) authorizes DPS to interview the child's parent to obtain social, background, and medical information. In the present case, Mrs. Wolf was present in the court and questioned by counsel on such facts. Paragraphs (2) and (3) authorize DPS to receive information and birth certificates from out of state. This information was before the court. Paragraphs (4) and (5) authorize DPS to investigate the proposed foster home or child-care facility. In the present case, an in-home investigation of the Smiths was conducted by DPS. The final paragraphs of the section pertain to the rights and responsibilities of DPS and the adopting parents. Thus, all pertinent information on the child which is mandated by the statute was available to the court.
In view of the facts that Mrs. Wolf consented to the adoption and that all pertinent information on Zachary was available to the court, we cannot see how the best interests of this child, who has now lived for two years with the Smiths, could be promoted by setting aside the adoption for failure to consult DPS at the proper time. The statute was intended to protect adopted children and insure their welfare, not to subject them to subsequent attacks on their adoption proceedings due to harmless procedural error. We do not consider failure to comply with § 38-7-15 to render an adoption void. Such a holding could well destroy long completed adoptions and cause chaos in many areas, including that of inheritance. Upon these particular facts, we affirm the probate court's decision.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur. *Page 753