This is an adoption case.
The father filed a petition in the Probate Court of Marion County, Alabama, to set aside the final decree of adoption of his minor child by the appellees. The probate court denied that petition, and the father appeals to this court. We affirm.
On December 16, 1978, the father signed a written document whereby he consented to the adoption of his minor child by the appellees, who are his brother and sister-in-law. The appellees did not file the consent to adoption with the probate court until October 19, 1984. They filed their petition to adopt the child four days later, on October 23, 1984. The child has lived with the appellees since February 1978.
The rule in Alabama is that, once valid consent to adopt has been given and the child has been placed in the custody of *Page 1077 
the adoptive parents, consent can only be revoked for legal cause, such as where the consent was procured through fraud, undue influence, coercion, or other improper methods, or where, under all the circumstances, the probate court finds it to be in the best interests of the child for it to be returned to the natural parent. Ex parte Nice, 429 So.2d 265 (Ala. 1982); In reMiller, 473 So.2d 1069 (Ala.Civ.App. 1985); Lawshe v. Seals,443 So.2d 1249 (Ala.Civ.App. 1983); Wolf v. Smith,435 So.2d 749 (Ala.Civ.App. 1983).
The sole issue raised by the father on appeal is whether the written consent to adoption, which he gave on December 16, 1978, was procured by fraud, undue influence, coercion, or other improper methods. We, therefore, only address this issue.
In adoption proceedings, when the case has been presented to the trial court ore tenus, that court's findings will be presumed by this court to be correct and will not be disturbed on appeal unless they are plainly and palpably erroneous.Lankford v. Hollingsworth, 283 Ala. 559, 219 So.2d 387 (1969);In re Miller, 473 So.2d 1069; Lawshe v. Seals, 443 So.2d 1249;State Department of Pensions and Security v. Whitney,359 So.2d 810 (Ala.Civ.App. 1978). The standard of review in this case is, therefore, quite narrow in scope.
We have reviewed the record and can only conclude that the probate court's findings are not plainly and palpably erroneous. There is testimony which clearly supports the conclusion that the father's consent to adoption was procured without fraud, undue influence, coercion, or other improper methods. Both the father and his appellee-brother testified that the brother did not use force, intimidation, threats, or promises to obtain the father's consent to adoption. As for the question of fraud, there is conflicting testimony regarding the alleged agreement between the father and the appellee-brother and regarding the father's understanding of what he was consenting to when he signed the document on December 16, 1978. Such conflicts in testimony were for the probate court, not this court, to resolve.
In closing, this court notes that it is troubled by the appellees' almost six-year delay between procuring the father's consent and using it by filing it and their adoption petition. We have found no case law in this state, however, which would render a "six-year-old" consent invalid. This court has held that "the giving of consent at some point is one of the prerequisites to the probate court's consideration of the [adoption petition]." Davis v. Turner, 337 So.2d 355, 361
(Ala.Civ.App.), cert. denied, 337 So.2d 362 (Ala. 1976) (emphasis supplied). We have not placed a time restriction on the use of a parent's consent to adoption after that consent has been procured. Moreover, we have held that the written consent form is only a memorandum that preserves the parent's consent for later use. Wolf, 435 So.2d at 751; Davis, 337 So.2d at 360.
We do note that the father and the appellee-brother have little formal education. The appellees' explanation of their delay in filing an adoption petition and the written consent was that they originally thought that, once the father had signed the consent and it had been notarized, nothing further was necessary to complete the adoption. The appellees claimed that they later learned that they had to file an adoption petition when they discussed the matter with a lawyer.
We further feel constrained to note the circumstances giving rise to the appellees' custody of the child for such a long period of time prior to the adoption. The father had killed the child's mother and was serving a fifteen-year sentence in a Florida prison for second-degree murder when he signed the adoption consent form on December 16, 1978. The child had begun living with the appellees in February 1978 as the result of her father's imprisonment. When the father was released from prison on October 19, 1984, after having served approximately six years of his sentence, he sought to regain physical custody of his child from the appellees. It was his release *Page 1078 
and his subsequent actions which obviously prompted the appellees to consult a lawyer and to file the father's written consent on October 19, 1984, and their adoption petition on October 23, 1984.
The fact of the appellees' delay in using the father's written consent to the adoption of his child was a matter which should have been — and we can only assume was — taken into consideration by the probate court in making its final decision.
This case is due to be and is affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.