Samantha Ann Barratt Fowler petitions this Court for a writ of mandamus[1] directing the Honorable Robert E. Lewis, Judge of the District Court of Etowah County, to vacate his order denying her motion for denial of adoption and denial of award of custody and to enter an order granting said motion. Fowler submits that Judge Lewis abused his discretion in denying her motion for denial of adoption and award of custody, because, she argues, her consent to the adoption of her two children, Lillian Rachel Barratt and Rebecca Lea Barratt, by Robert Charles Merkle, Jr., and his wife, Barbara Ann Merkle, was obtained from her by fraud and, therefore, was void ab initio.[2]
 FACTS
In February 1988, Fowler, a resident of Etowah County and the natural mother of Lillian Rachel Barratt and Rebecca Lea Barratt, feared that her two children would be taken from her by the Alabama Department of Pensions and Security, because she had been interviewed a few months earlier by a Department of Pensions and Security (now the Department of Human Resources) caseworker who had received reports that Fowler was neglecting to provide adequate care for her two children. Fearing that D.P.S. would take her two children away from her, Fowler telephoned Fran and Jim Barratt (her ex-husband's parents, who lived in Michigan and who were the grandparents of her two children) and asked them to take physical custody of her two children.
Instead of accepting custody of their two grandchildren, Mr. and Mrs. Barratt told Fowler that they knew of a couple, the Merkles, who also resided in Michigan, who desperately wanted to adopt some children. After agreeing to permit the Barratts to approach the Merkles concerning the possibility of her permitting them to adopt her two children, Fowler received a telephone call from Barbara Merkle on Thursday, February 11, 1988. During that telephone conversation, Mrs. Merkle told Fowler that she and her husband wanted to adopt Fowler's two children. Later in that same conversation, Mrs. Merkle told Fowler that she and her husband would be contacting a lawyer in Alabama in order for him to make the necessary arrangements for the adoption. Furthermore, Mrs. Merkle told Fowler that she and her husband would travel to Etowah County to meet with her and her two children on Monday, February 15, 1988.
That Monday, the Merkles and Fran Barratt met with Fowler and her two children. Allegedly, during that encounter, Fowler reiterated her desire to have the Merkles adopt her two children. The next day, the Merkles, Mrs. Barratt, and Fowler arrived at the law office of W.N. Watson, the Alabama attorney representing the Merkles in the adoption proceeding. That afternoon, Mr. Watson met privately with Fowler in his law office to discuss the adoption process with her. During that one-on-one meeting, Mr. Watson allegedly went over a proposed written agreement with Fowler that authorized the adoption of her two children by the Merkles. In that discussion, Attorney Watson allegedly told Fowler that after she signed the agreement the only way that she could revoke that agreement would be through a court order. Allegedly, after Watson explained the consequences of signing the agreement, Fowler executed it in Watson's presence. That same day, the Merkles executed the adoption petition.[3] *Page 964 
Despite Fowler's execution of the agreement, the Merkles and Fowler agreed that the two children would remain with Fowler until March 28, 1988, because Fowler wanted to be with the children to celebrate the birthday of one of them. However, on February 19, 1988, Fowler telephoned the Merkles, who were then back in Michigan, and asked them to come down and pick up her two children on February 27, 1988, almost one month prior to the date earlier agreed upon. On February 27, 1988, the Merkles picked up the two children and returned to Michigan. On April 8, 1988, the Merkles filed their adoption petition, along with Fowler's written agreement, in the Probate Court of Etowah County. On that same day, Fowler filed in probate court a motion for revocation of her consent to adoption of her two children by the Merkles. On April 15, 1988, Fowler filed a petition to transfer the adoption proceeding to the District Court of Etowah County, and that motion was granted that same day. On May 9, 1988, an ore tenus hearing was held in the district court on the issue of whether the agreement executed by Fowler was obtained through fraud, specifically through misrepresentation.[4] At that hearing, Fowler testified that, prior to executing the agreement, Watson told her that she could revoke the agreement within six months of its execution; however, during that same hearing, Watson testified that he had told Fowler only that it would take at least six months after a court's interlocutory order granting the Merkles' petition for adoption before that court could enter a final order granting the adoption petition.[5] Watson further testified at that hearing that when he specifically asked Fowler whether she wanted to execute the agreement she told him that she wanted to sign it. After listening to other testimony given by Mrs. Merkle and Fowler's ex-husband, James A. Barratt, District Judge Robert E. Lewis entered an order on July 13, 1988, declaring that Fowler had given an informed, intelligent consent to the adoption of her two children by the Merkles when she executed the agreement.[6]
Fowler filed a notice of appeal to the Circuit Court of Etowah County. On August 22, 1988, the Merkles filed a motion to dismiss the appeal, claiming that there was already an adequate record to support an appeal to the Court of Civil Appeals pursuant to Rule 28(A), A.R.Juv.P. On April 7, 1989, the circuit judge implicitly overruled the Merkles' motion to dismiss the appeal when he transferred the appeal to the Court of Civil Appeals pursuant to Rule 28(D), A.R.Juv.P. On June 28, 1989, the Merkles filed with that court a brief in support of their position, and on August 9, 1989, that court issued an opinion in which it ruled that the order entered by Judge Lewis on July 13, 1988, denying Fowler's motion for denial of adoption and denial of award of custody, did not amount to a final order and, therefore, was not appealable to that court. Consequently, the Court of Civil Appeals dismissed Fowler's appeal.
On August 23, 1989, Fowler filed an application for rehearing, and on October 18, 1989, the Court of Civil Appeals withdrew its original opinion and substituted an opinion for the one withdrawn. Fowler v. Merkle, 564 So.2d 960
(Ala.Civ.App. 1989). In that substituted opinion, the Court of Civil Appeals reached the merits of the case by treating Fowler's appeal as a petition for a writ of mandamus. In its opinion, the Court of Civil Appeals upheld Judge Lewis's finding that Fowler had given an informed and intelligent consent to the adoption of her two children by the Merkles. Consequently, the Court of Civil Appeals refused to order Judge Lewis to vacate his interlocutory order of July 13, 1988.
On October 30, 1989, Fowler filed in this Court a petition for a writ of certiorari. This Court has chosen to treat that petition as a petition for writ of mandamus, pursuant to Rule 21(e), A.R.App.P. *Page 965 
 MANDAMUS
This Court has previously set forth the requirements for mandamus:
 "We note at the outset that mandamus is a drastic and extraordinary writ to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court. Barber v. Covington County Comm'n, 466 So.2d 945 (Ala. 1985). In cases involving the exercise of discretion by an inferior court, mandamus may issue to compel the exercise of that discretion. It may not, however, issue to control or review the exercise of discretion except in a case of abuse. Ex parte Smith, 533 So.2d 533
(Ala. 1988)."
Ex parte Edgar, 543 So.2d 682, 684 (Ala. 1989).
Our review of Judge Lewis's denial of Fowler's motion for denial of adoption and denial of award of custody necessitates a discussion of the rule in Alabama regarding the revocation of parental consent to adopt a child. In In re Miller,473 So.2d 1069, 1070 (Ala.Civ.App. 1985), the court stated the rule as follows:
 "The rule in Alabama is that, once a valid consent to adopt has been given and the child has been placed in the custody of the adoptive parents, consent can only be revoked for legal cause, such as where the consent was procured through fraud, undue influence, coercion, or other improper methods or where, under all the circumstances, the trial court finds it to be in the best interest of the child for it to be returned to the natural parents. Ex parte Nice, 429 So.2d 265 (Ala. 1982), appeal after remand, Shuttleworth v. Catholic Family Services, 439 So.2d 1292 (Ala.Civ.App. 1983); Williams v. Pope, 281 Ala. 416, 203 So.2d 271 (1967), appeal after remand, 284 Ala. 456, 225 So.2d 861 (1969) (citing In re Holman's Adoption, 80 Ariz. 201, 295 P.2d 372
(1956)); Lawshe [v. Seals], 443 So.2d 1249 [Ala. Civ. App. 1983]; Wolf v. Smith, 435 So.2d 749 (Ala.Civ.App. 1983); Hanlon v. Mooney, 407 So.2d 554 (Ala.Civ.App.), rev'd on other grounds, 407 So.2d 559 (Ala. 1981); Davis v. Turner, 337 So.2d 355 (Ala.Civ.App. 1976); Graves v. Graves, 51 Ala. App. 601, 288 So.2d 142
(Ala.Civ.App. 1973)."
(Emphasis added.)
The wisdom behind that rule is self evident. If a natural parent has freely and knowingly given the requisite consent to the adoption of his or her child, and that consent has been acted upon by the adopting parents by their commencing adoption proceedings, and if the proposed adopting parents have relied on that consent by taking the child into their custody and care for a substantial period of time and, especially if bonds of affection have been forged between them and the child, then to allow the natural parent to revoke his or her consent because he or she had a change of mind would create a great hardship for the child, for the adopting parents, and for the field of child adoption in general. See 2 Am.Jur.2d Adoption, § 46 (1962). For that important reason, the courts in Alabama have permitted a natural parent the right to revoke his or her consent to adoption only where that consent was acquired through 1) fraud, 2) undue influence, 3) coercion, or 4) other improper methods, or 5) where, under all the circumstances, the trial court finds it to be in the best interest of the child for it to be returned to the natural parent.
Our review of the record shows that the trial court could have found that Fowler formed a sane, rational, and intelligent decision to allow the adoption of her two children and that she understood the important ramifications of that consent. The record contains no evidence that Fowler's consent was procured by fraud, undue influence, coercion, or other improper method or that it would have been in the best interest of the two children for them to be returned to Fowler. In fact, Fowler testified at the district court hearing that she had been thinking about putting her two *Page 966 
children up for adoption for two years prior to her contact with the Merkles.
After a thorough review of the record, we conclude that the Court of Civil Appeals did not err in refusing to order the district court to set aside its order.
WRIT DENIED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.
[1] Although the petition was styled as a petition for writ of certiorari, we have chosen to treat it as a petition for writ of mandamus. See Rule 21(e), A.R.App.P.
[2] Ala. Code 1975, § 26-10-3, requires the consent of both parents before a child can be adopted; however, the consent of one of the parents may be dispensed with when that parent 1) has abandoned the child, 2) cannot be found, 3) is insane, 4) is otherwise incapacitated, or 5) has lost guardianship of the child either through divorce or by an order of a court.
[3] Despite the fact that the Merkles' adoption petition purports to have been notarized on February 2, 1988, Watson testified in the district court that the Merkles actually executed the adoption petition on February 16, 1988.
[4] See Ala. Code 1975, § 6-5-101.
[5] See Ala. Code 1975, § 26-10-4.
[6] In that same order, Judge Lewis noted that on May 11, 1988, James A. Barratt, the natural father of Fowler's two children, had also executed a written agreement authorizing the adoption of his two children by the Merkles.