219 So.2d 387

**Wilbert W. LANKFORD**

**v.**

**S. J. HOLLINGSWORTH et ux.**

**6 Div. 567, 568.**

Supreme Court of Alabama.

Feb. 13, 1969.

Norman K. Brown, Bessemer, for appellant.

Rogers, Howard, Redden & Mills, Birmingham, for appellees.

MERRILL, Justice.

This appeal is from a decree of the Probate Court of Jefferson County granting adoption of two young boys by their maternal grandparents, who are the appellees here. The appellant is the natural father of the boys.

These proceedings began upon the petitions filed on March 2, 1966, by S. J. Hollingsworth and his wife for the adoption of the two boys. While the petitions were separate, the testimony was identical and the appeals were consolidated. Our opinion in one disposes of both appeals. Their petitions alleged that the natural father had abandoned the children and that the children were now in the custody or guardianship of the petitioners. Their petitions were accompanied by a written consent for adoption that was signed by the natural mother, whose name now is Wonda Ray Nazarchyk.

The probate court ordered an investigation to be made into the case to determine the qualifications of the adopting grandparents and such investigation was conducted by the Jefferson County Department of Pensions and Security. A favorable report was filed in the case by the director on May 4, 1966. Acting thereupon, the probate court rendered a final decree of adoption on May 5, 1966, holding that the children were adopted by the petitioners.

Later, on August 8, 1967, the appellant, Wilbert W. Lankford, filed his petition to have the adoption set aside citing as reasons that he had not received notice of the adoption proceeding, that he had not abandoned his children as alleged and that his attempts to see the children had been frustrated by the children's grandparents. He further alleged that his whereabouts were known by the natural mother and the adopting grandparents at the time they filed their petitions.

The probate court heard the father's petition on September 26 and correctly set aside the order of adoption on the ground that the proceeding had taken place without notice to the father when his whereabouts were known to the petitioners. This order probably was in compliance with the holding in Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62.

The probate court reset the date for hearing the petition for January 18, 1968. At that time, all parties were before the court, and after hearing all the evidence, the probate court found that the father had abandoned the children and entered the final decree on adoption.

■ Appellant argues under appropriate assignments of error that the trial court was without jurisdiction because either the father's "consent or the consent of the Department of Public Welfare (if in fact he had abandoned said child) is necessary to give the Probate Court jurisdiction since that Court is a Court of limited jurisdiction." We cannot agree.

Title 27, § 3, Code 1940, provides in pertinent part:

"No adoption of a minor child shall be permitted without the consent of his parents, but the consent of a parent who has abandoned the child, or who cannot be found, or who is insane or otherwise incapacitated from giving such consent, or who has lost guardianship of the child, through divorce proceedings, or by the order of a juvenile court or court of like jurisdiction, may be dispensed with, and consent may be given by the guardian if there be one, or if there be no guardian by the state department of public welfare. In every such case the court shall cause such further notice to be given to the known kindred of the child as shall appear to be just and practicable. In case of illegitimacy the consent of the mother alone shall suffice except where paternity has been established. * * *"

We construe this statute to mean that the consent of the Department of Pensions and Security (formerly Public Welfare) is required only when the custody of the child has been awarded to that agency, or where there is no parent whose consent is required and the child has no guardian.

■ In Claunch v. Entrekin, 272 Ala. 35, 128 So.2d 100, we held that the probate court had jurisdiction where only the mother gave her consent and the petition contained, as here, an allegation that the father of the child had abandoned it, in a proceeding brought by the natural father to set aside the adoption decree. In Gandy v. State, 250 Ala. 543, 35 So.2d 161, we said: " * * * Under section 3, Title 27, Code, the consent of the parents may be dispensed with when they have lost guardianship of the child or children by an order of a juvenile court or court of like jurisdiction, and such consent may be given by the State Department of Public Welfare."; and in Evans v. Rosser, 280 Ala. 163, 190 So.2d 716, we held that the mother's consent for adoption was sufficient where the adoptive father had "lost guardianship of the child, through divorce proceedings," and his consent to the adoption was not necessary.

We hold that the probate court did have jurisdiction to hear and dispose of the cause.

The other point raised by appellant is that the trial court erred in holding that he had abandoned his two children. The appellant and the mother of the children were divorced on March 8, 1961, in Jefferson County. At the time of the divorce, the oldest child was not quite two years old. The youngest child was born July 18, 1961, some four months after the divorce was granted. The mother of the children was granted custody of them and the father was given a reasonable right of visitation and also was required to pay $40.00 per month for support of the oldest child and $15.00 per month support for the youngest. The appellant made monthly payments for the support for a while and the last payment was made in December, 1962. The appellant also admitted that he had not made an attempt to visit the children since September, 1962. In September, 1962, an altercation developed between the appellant and Mrs. Hollingsworth and the appellant pleaded guilty to assault and battery charges. He further admitted that he had not called on the phone to see if he could visit the children.

At the present time, the appellant has remarried and is living with his wife in Palmetto, Georgia, and has two children by his second marriage.

Some of the evidence is in conflict, but there is evidence that after moving to Georgia, he has returned to Birmingham to visit regularly, from one to two times each month. He often visited his sister who lived in the same neighborhood as the children and frequently passed the house where the children lived. However, he never stopped to see them or attempted to see them. He has not sent them gifts or cards at Christmas time, or on their birthdays, or on other holidays.

Both children are now enrolled in school; however, appellant has never inquired about their education or made any effort or offer to assist them with their education.

On one occasion since September, 1962, the mother of the children contacted appellant and asked him to assist her financially with one of the children who was having emotional problems. He refused to do so and told the mother that he now had a wife and family of his own and that he could not "be bothered" by the problems of these two children. This conversation took place about January, 1966.

Neither the mother of the children nor the appellees, in whose custody the children have been most of the time since the divorce, have ever prevented appellant from seeing the children or told him that he could not see the children. The only occasion when there was any difficulty about visitation was the occasion when the appellant assaulted Mrs. Hollingsworth in her home and in the presence of his children.

On the four occasions since the divorce when appellant did visit the children, his visits were brief. He never took either of the children away from the home. On one occasion, in speaking of his oldest child to Mrs. Hollingsworth, he said, "I can't stand that brat, how do you stand him?" In his testimony, appellant speaks of being "fed up." By this, he apparently meant he was "fed up" with carrying out the obligations of a father. He stated, as the decree of the court recites, that after September, 1962, he "decided to do nothing further" about his children.

The probate court detailed some of this same evidence as supporting its decree approving the adoption of the children by appellees. The court found specifically that the children had been abandoned by appellant and that it was to their best interest that the petitions be allowed and approved.

 The finding of the probate court, based on the examination of witnesses ore tenus, is presumed to be correct and will not be disturbed on appeal unless palpably erroneous. Davis v. Davis, 278 Ala. 328, 178 So.2d 154; Cox v. Logan, 262 Ala. 11, 76 So.2d 169. We cannot say that the finding of the probate court was plainly erroneous.

Affirmed.

LIVINGSTON, C. J., and COLEMAN and HARWOOD, JJ., concur.