HOLMES, Judge.
-This is an appeal'by Andrew Straszewicz, the natural father of Lucy Seale Straszew-icz (Seale), from a judgment rendered by the Probate Court of Sumter County, wherein it was found that the appellant had abandoned his child.
The single issue before this court is whether the evidence sustains the trial court’s finding of abandonment. We hold that it does not and, accordingly, reverse and remand.
Tit. 27, § 3, Code of Alabama 1940, in pertinent part, provides that consent of a child’s parents must be obtained for its adoption, unless the parents have abandoned the child. Seale’s stepfather, appel-lee herein, brought this action in the lower court alleging abandonment by Mr. Strasz-ewicz in order to enable the stepfather to proceed with Seale’s adoption. Mr. Strasz-ewicz had refused to consent to the adoption.
The record discloses the following:
Mr. Straszewicz and Mrs. Gallman were married in Livingston, Alabama, on July 22, 1967. Their daughter, Seale, was born on September 21, 1969, with a cleft lip. Operations have subsequently remedied this condition. At the time Seale was born, Mr. Straszewicz was an enlisted man in the United States Air Force, serving at Eglin Air Force Base in Fort Walton Beach, Florida.
In September of 1971, the parties were divorced and custody of Seale was awarded to Mrs. Gallman. The divorce decree ordered Mr. Straszewicz to make monthly child support payments of $100 and additionally granted him visitation periods with Seale at all convenient times during daylight hours, the minimum visitation being every other Saturday. Mrs. Gallman and Seale lived with her parents in Livingston, Alabama, subsequent to the divorce. While stationed at Eglin, Mr. Straszewicz did not exercise his visitation rights. Evidence revealed that before the divorce, he had not been particularly affectionate and was somewhat inattentive toward the. child.
In December of 1971, he was transferred to Thailand, where he served until January of 1973. At that time, he was sent to Ellsworth Air Force Base in South Dakota. He remained there until his discharge from the United States Air Force on November 28, 1973.
During the period of time from December, 1971, until December, 1973, Mr. Strasz-ewicz was physically present in Alabama only for approximately two weeks in January of 1972, during which time he remained in Birmingham, his parents’ home. He did not visit Seale during this two year period.
In October of 1973, Mrs. Gallman married her present husband, Mr. Kenneth Gallman. Their residence has been Livingston, Alabama, since their marriage.
Upon his discharge from the service, Mr. Straszewicz returned to Birmingham, Alabama, where in January of 1974, he had an operation which precluded his engaging in strenuous labor from some time thereafter. For approximately the next year, i. e.; early 1974 until February, 1975, Mr. Straszewicz held various jobs for short periods of time. The positions he held, e. g., a salesman for a printing company, a salesman for an automobile dealership, manager trainee for an auto painting company, etc., were all short lived and the wages therefrom were minimal at best.
From February of 1975 until August of that year, Mr. Straszewicz was unemployed, though he actively sought employment com- *595 mensúrate with the rating he had obtained by passing a civil service examination. Sometime in August of 1975, he obtained a position as a police officer with the Tarrant City Police Department in Birmingham, Alabama.
From the time of the divorce in September of 1971 until September of 1975, Mr. Straszewicz never visited Seale. On one occasion, apparently in January of 1972, he did telephone to inquire whether he could see the child, but after being informed that he could, he failed to visit her.
Testimony showed that his ex in-laws, Mr. and Mrs. Seale, with whom Mrs. Gall-man resided from the divorce until her remarriage in October of 1973, did nothing to prohibit the exercise of his visitation rights. Moreover, although Mr. Straszewicz and his ex-wife’s post divorce relationship cannot be described as cordial, there was no evidence to show that bitter quarrels ensued upon their contact such as to actively discourage his exercise of his visitation rights. The evidence further disclosed that although Mr. Straszewicz was in Livingston, Alabama, which is approximately 135 miles from Birmingham, Alabama, for a portion of one day in 1974, he never attempted to contact his child.
While he was in Thailand, Mr. Straszew-icz did purchase a ring for Seale, which he sent to his mother, and she, in accordance with his instructions, mailed it to the child. He also sent Seale a birthday card and a doll from Ellsworth Air Force Base in South Dakota. Other presents have been given to the child during the pendency of this litigation.
Mr. Straszewicz’s child support payments of $100 per month were paid by allotment while he remained in the Air Force, the last such payment having been made in December of 1973. Thereafter, he failed to make another child support payment for approximately 19 months. In early August of 1975, prior to being apprised of any matters concerning Seale’s adoption, Mr. Straszew-icz sent Mrs. Galiman, for the monthly child support payment, two savings bonds of $100 and $25 face value, and a check for an amount equal to the difference between $100 and the cash value of the bonds. He explained this payment by stating that he had obtained both an income tax refund and also stable employment (his position with the Tarrant Police Department), and he therefore was in a financial position to reinstitute the child support payments.
On August 7, 1975, Mr. Gallman’s attorney sent Mr. Straszewicz a letter stating that Mr. Galiman wished to adopt Seale and, if Mr. Straszewicz would consent to the adoption, Mrs. Galiman would neither seek to have him held in contempt for nonpayment of child support nor attempt to procure a judgment for the arrearage.
Mr. Straszewicz, subsequent to receipt of the August 7 letter from Mr. Gallman’s attorney, sent Mrs. Galiman a $100 cashier’s check dated September 17, for the September child support payment. The check was not accepted by Mrs. Galiman and was returned to Mr. Straszewicz by her attorney. On September 19, 1975, Mr. Straszewicz was originally served with the complaint in this action. At the time of trial, he had paid the entire amount of the child support arrearage into a trust account to be held by Mr. Gallman’s attorney pending the outcome of the litigation.
The Probate Court of Sumter County found that Mr. Straszewicz had abandoned his child and that it was in the best interest of the child that she be adopted. It is from this decree that Mr. Straszewicz takes this appeal.[1]
I
As previously stated, the sole issue before this court is whether the above evidence sustains a finding of abandonment. We deem our holding in Henderson v. Feary, Ala.Civ.App., 340 So.2d 808, cert. den. Ala., *596 340 So.2d 811 (1976), to be dispositive of this issue.
In that case, the father had neither visited his child nor made child support payments for approximately 18 months prior to the adoption. The delinquency in child support payments was occasioned by the father’s loss of his job and later inability to procure employment paying other than minimal wages. He had not received notice of the adoption proceeding and moved to have it set aside. Consequently, there having been no consent by the father, a showing of abandonment was necessary to sustain the adoption.
In holding that the facts enumerated above failed to constitute abandonment, this court stated:
“An abandonment . . within the purview of the adoption laws must be an intentional abandonment .
“[Voluntary abandonment does not include an act or a course of conduct pursued by a parent which is done through force of circumstances or dire necessity, but it is used more in the sense of a wilful act or course of conduct, such as would imply a conscious disregard or indifference to the child in respect to the parental obligations owed. . . . ” (35 A.L.R.2d 662, 668-69)
If the circumstances of Henderson, supra, do not constitute abandonment, assuredly those contained herein do not.
The evidence shows that Mr. Straszewicz did not visit Seale for approximately 4 years, from September of 1971, the date of the divorce, until September of 1975, the time this litigation initially commenced. However, for two of those years he was geographically removed from the state while on active military duty. He did display some concern for Seale during this time, as evinced by the gifts he sent to her. Moreover, he met his child support obligations during this period of time.
A 19 month lapse in Mr. Straszew-icz’s child support payments did occur from January of 1974 until August of 1975. However, similar to the facts in Henderson, supra, the period of nonpayment is coincidental to a period of unemployment or unstable employment for the father. It is important to note that in this instance, pri- or to being informed of any matters regarding Seale’s adoption, Mr. Straszewicz had reinstated the child support payments. He began the payments immediately after being informed that he had obtained a salaried position with the Tarrant Police Department. Additionally, he made another payment after receiving the letter from Mrs. Gallman’s attorney, but before being served with the complaint in this action. He also borrowed the funds to eliminate the child support arrearage, despite Mrs. Gall-man’s offer not to institute collection proceedings if he would merely consent to the adoption. Payment of approximately $2,000 in child support payments, when one could conceivably escape this obligation, does not appear consonant with a settled intent to forego all parental responsibilities. See Butler v. Giles, 47 Ala.App. 543, 258 So.2d 739. Moreover, making the child support payment in August before he had received any information concerning Seale’s adoption, i. e., before his action could be attributed to any ulterior motive, plainly points out that Mr. Straszewicz was both aware of and attempting to fulfill his parental duty of supporting his child. Taken in sum, Mr. Straszewicz’s actions do not manifest the conscious disregard and indifference the law requires to sever the parent-child bond.
At most, the facts reveal that Mr. Strasz-ewicz failed to make child support payments for 19 months and neglected to visit his child, when practical to do so, for approximately the same length of time. In this instance, such a course of conduct does not constitute abandonment. Schwaiger v. Headrick, 281 Ala. 392, 203 So.2d 114.
Mrs. Gallman seeks to distinguish Schwaiger and Butler, supra, on the grounds that in those cases a conflict between the divorced parties or between one of them and the other’s family members justified the alleged abandoning parent’s *597 lack of visitation. Since hostility such as to preclude Mr. Straszewicz’s exercise of his visitation rights was absent in this instance, Mrs. Gallman concludes that his lack of visitation, in conjunction with the other evidence, is sufficient to sustain the trial court’s finding of abandonment. We cannot agree. A finding of abandonment must be premised on more unequivocal conduct than that displayed by Mr. Straszewicz. Lankford v. Hollingsworth, 283 Ala. 559, 219 So.2d 387.
This court is cognizant of the difficult decision with which the trial court is confronted in ruling on a matter of this nature, wherein the best interest of the child, albeit irrelevant to the issue at hand, exerts an ever present influence on the litigation. Nevertheless, we are bound to view the evidence in accordance with the established legal principles as enunciated in prior decisions. So viewing the evidence in this instance requires reversal of the judgment rendered below.
REVERSED AND REMANDED FOR ENTRY OF A JUDGMENT NOT INCONSISTENT WITH THIS OPINION.
WRIGHT, P. J., and BRADLEY, J., concur.

. For a prior decision regarding this matter, see Straszewicz v. Galiman, Ala.Civ.App., 342 So.2d 1322 (1977). After our prior decision, the parties submitted the transcript of the testimony previously given in the circuit court to the probate court. The probate court rendered its decision on this record and it is from this that Mr. Straszewicz appeals.