437 So.2d 544 (1983)
Ex parte The DEPARTMENT OF PENSIONS AND SECURITY OF the STATE OF ALABAMA.
(Re In the matter of the ADOPTION OF Baby Girl BARBER.)
Civ. 3549.
Court of Civil Appeals of Alabama.
May 11, 1983.
As Modified on Denial of Rehearing June 24, 1983.
Certiorari Denied September 2, 1983.
*545 Charles A. Graddick, Atty. Gen., Mary Lee Stapp and Clyde P. McLendon, Asst. Attys. Gen., and Robert E. Gibney of Kilborn & Gibney, Mobile, and William H. Traeger, III, of Manley & Traeger, Demopolis, for appellant.
G. Daniel Evans of Evans & Lyerly, Birmingham, for appellee.
Alabama Supreme Court 82-929.
BRADLEY, Judge.
This is an adoption case.
On May 20, 1981 the Department of Pensions and Security (hereinafter referred to as DPS or the department) was awarded custody of Baby Girl Barber by an order which terminated parental rights and instructed the department to find an adoptive home for the infant. Prior to this time Mr. and Mrs. Donald Stuart of Livingston, Alabama, had applied through DPS to become adoptive parents and had undergone the required procedures to gain the department's approval. After the court order of May 20, 1981, DPS conducted some further evaluations and chose the Stuarts for a trial placement of Baby Girl Barber. The terms of this trial placement, which were outlined in a meeting between DPS and the Stuarts and specified in a contract signed by both parties, left custody of the child in the department. By their agreement DPS was given the right to terminate the trial placement at any time, and the Stuarts promised not to institute adoption proceedings without the approval of DPS. The child was thereafter placed in the Stuart home in August of 1981.
Shortly after the trial placement began, a county social worker with DPS in Livingston received an anonymous telephone call in which she was told that Donald Stuart was engaged in an extramarital affair and that the Stuarts' marriage was in jeopardy. This information was denied by both Donald and Darlene Stuart. Thereafter, a second anonymous telephone call was made to the county worker with more specific allegations concerning Stuart's extramarital affair; and, again, the information was denied by both the husband and wife. On December 30, 1981 Mrs. Stuart contacted the county social worker and told her that Mr. Stuart had admitted that he was involved in an extramarital relationship. She also informed the DPS social worker that she intended to seek a divorce from her husband and requested that she be allowed to proceed with the adoption. The county worker, after making contact with state DPS officials, informed Mrs. Stuart that the department would investigate further. Subsequently, Mrs. Stuart moved into her family's home in Aliceville with the child. On January 26, 1982 the department called a meeting at which various DPS social workers were present together with both Mr. and Mrs. Stuart and at which the department took the child from Mrs. Stuart, citing as its reason the Stuarts' breach of the temporary placement agreement. Specifically, the department stressed as its reason for taking the child the fact that the Stuarts were getting a divorce and that the placement agreement had emphasized that the child would be placed with a two-parent family.
On February 3, 1982 Mrs. Stuart filed a petition in the Sumter County Probate Court seeking to adopt Baby Girl Barber. In her petition Mrs. Stuart claimed that DPS had arbitrarily and capriciously withheld its consent for the adoption. The department filed a motion to dismiss. Without a hearing the probate court granted the department's motion to dismiss. Mrs. Stuart requested and was granted a rehearing. Before a rehearing could be held, Mrs. Stuart's motion to transfer the matter to the district court was granted. An ore tenus hearing was held in the district court which found that DPS had arbitrarily and capriciously withheld its consent *546 for the adoption. From the proceedings in the district court, DPS has filed both a petition for extraordinary relief and an appeal to this court. Mandamus is the proper vehicle for review in this case. See Ex parte Adamson, 408 So.2d 151 (Ala.Civ.App. 1981).
We note at the outset that counsel for Mrs. Stuart has filed a motion to strike the reply brief of the department on grounds that it was filed late and that it contains matters which were not presented to the trial court. While we deny the motion, we assure counsel for both parties that we have limited our examination of the present proceeding to matters which are contained in the record.
In its petition for mandamus, prohibition, or other extraordinary relief, DPS has urged us to set aside the district court's order of November 16, 1982 in which it found that the department had acted arbitrarily and unreasonably in withholding its consent for the adoption. The department's argument is based on our decision of Sanders v. Department of Pensions & Security, 406 So.2d 948 (Ala.Civ.App.1981), in which we held that consent by DPS is a jurisdictional prerequisite to an adoption proceeding and that a court may not proceed in the absence of such consent unless it is found that the department acted arbitrarily and unreasonably in withholding it.
Mandamus is an extraordinary remedy which should be granted only when there is a clear showing that the trial court abused its discretion. Ex parte Hartford Insurance Co., 394 So.2d 933 (Ala.1981). Absent any abuse of discretion, mandamus will not lie.
When the district court took cognizance of the instant adoption proceeding after it had been transferred from the probate court, it set down as the sole issue for determination whether DPS had arbitrarily and unreasonably withheld its consent for Mrs. Stuart to proceed with her adoption of Baby Girl Barber. Moreover, the hearing was conducted on this sole issue and was concluded by an order of the district court in which it found that DPS had, in fact, acted arbitrarily and capriciously in the matter. We have stated in our decision of In re Roberts, 349 So.2d 1170 (Ala.Civ.App. 1977), that what constitutes arbitrary and capricious action on the part of DPS is a question of fact. Thus, in its hearing and in its order, the trial court was involved in making a factual determination of whether the department had unreasonably withheld its consent to the adoption. The question before this court then is whether the trial court abused its discretion in holding that DPS arbitrarily and capriciously withheld its consent.
In its brief and argument DPS states that it has a legal duty to consent or refuse to consent to adoptions on the basis of the best interests of the child. The department urges us to reverse the district court's finding on the basis of the fact that Mrs. Stuart did not meet her burden of proof in demonstrating that it had acted arbitrarily and unreasonably. See Sanders v. State Department of Pensions & Security, supra; In re Roberts, supra. The department emphasizes the terms of the temporary placement agreement with the Stuarts which gave it the right to terminate the temporary placement at any time. More specifically, DPS argues that its policies require that all infants be placed in two-parent homes. The department claims that such a standard is based on sound reasons and that it had been explained to Mrs. Stuart at the time of the temporary placement. Since the standards for termination were based on sound reasons and previous departmental practice and since Mrs. Stuart had been informed of these standards, DPS claims that the trial court erred in finding that it had acted arbitrarily and capriciously in withholding consent.
Mrs. Stuart, in urging us to uphold the trial court's decision, states that she informed a county social worker on December 30, 1981 that she intended to seek a divorce from her husband. She also says that she told the county worker that she wished to proceed with the adoption and was informed that the department would investigate further. Mrs. Stuart indicates that *547 Baby Girl Barber was cared for and loved during the time that she remained with her and for this reason further claims that the department's decision to remove the child on January 26, 1982 was made without justification and in contravention of its promise to aid her in completing the adoption process as a single parent.
Again, we point out that anyone seeking to adopt a child whose permanent custody has been placed with DPS must have the department's consent and, if such consent is refused, the burden of establishing that such consent was arbitrarily refused is on the party seeking adoption. See In re Roberts, supra.
In State Department of Pensions & Security v. Whitney, 359 So.2d 810 (Ala.Civ. App.1978), we provided a definition of what constitutes an arbitrary and unreasonable withholding of consent for an adoption, saying:
"In the present case the probate court found that DPS had arbitrarily and unreasonably withheld its consent to the adoption. However, a determination by an administrative agency is not `arbitrary' or `unreasonable' where there is a reasonable justification for its decision or where its determination is founded upon adequate principles or fixed standards." (Citations omitted.)
The supreme court, in its decision of Pritchett v. Nathan Rodgers Construction & Realty Corp., 379 So.2d 545 (Ala.1979), stated that arbitrariness is present when a governmental entity lacks standards on which to make its determination and proceeds on a "case-by-case basis." Although there is no fixed definition of arbitrary and unreasonable action through which to review the instant appeal, the cited decisions do hold that if it be shown that DPS was acting in the absence of fixed standards on a case-by-case basis, the trial court's finding that the department arbitrarily withheld its consent for adoption must be upheld.
DPS urges us to find that its actions were not arbitrary and unreasonable because it was acting on the basis of a standard which required that infants be placed with two-parent families rather than with a single adoptive parent. The department says that this standard is approved in national adoption guidelines and that Mrs. Stuart had been made aware of it through the preplacement conference and tentative placement agreement. The record indicates that DPS has long followed the practice of placing infants with two-parent families and further shows that this procedure has wide acceptance and is thoroughly grounded in logic.
The evidence adduced at trial indicates that DPS acted under its guidelines during the time that it investigated the home of Donald and Darlene Stuart as an adoptive resource for Baby Girl Barber. During this period the department was making an effort to see that the infant was placed in a home where she would be raised by two parents. The initial trial placement of Baby Girl Barber in the Stuart home and the investigation which preceded it were conducted under standard DPS procedures and governed by department policy. However, when Mrs. Stuart approached a DPS official on December 30, 1981 to inform her that she was getting a divorce and to solicit the department's aid in proceeding with the adoption as a single parent, she was told that DPS would investigate further. After this conference DPS conducted an investigation which the trial court could have concluded was aimed at a determination of whether Mrs. Stuart, as a single parent, would be permitted to adopt the child. Concerning this phase of the investigative procedure a DPS official stated at trial: "We were considering her as an adoptive resource to determine if the child's best needs would be served [by allowing it] to remain in that home because the child was [already] in her home."
From the evidence before it, the trial court could reasonably have concluded that DPS had in this instance, in effect, abandoned its policy of seeking a two-parent home for Baby Girl Barber and that it had proceeded with Mrs. Stuart's case on an ad hoc basis. Despite the fact that guidelines existed under which the department should *548 have sought a two-parent home for Baby Girl Barber, DPS proceeded with an investigation of Mrs. Stuart as a single-parent adoptive resource. After so doing, the department is unable to argue later that it was following its standard of family placement when it took Baby Girl Barber from Mrs. Stuart on January 26, 1982. When the department failed to notify Mrs. Stuart within a reasonable time after December 30, 1981 that it would have to terminate the trial placement according to the agency's established guidelines and chose, rather, to proceed with an investigation which, by its own admission at trial, was outside its guidelines, it was then proceeding with Mrs. Stuart's case on an ad hoc basis. During the period between December 30, 1981 and January 26, 1982, DPS conducted a further investigation which was favorable to Mrs. Stuart; and, throughout the entire placement period, the department never questioned that the child was loved and cared for. These facts, coupled with the department's decision to proceed with the adoption investigation in contravention of its own standards, are supportive of the trial court's conclusion that DPS acted arbitrarily and capriciously in withholding its consent for the adoption.
The department lays great stress on the fact that the tentative placement agreement gave it the right to take the child at any time and also required that the Stuarts maintain a suitable family environment for Baby Girl Barber. The existence of this agreement and Mrs. Stuart's awareness of it, DPS claims, gave it the right to terminate the tentative placement and reasonably withhold its consent for the adoption. Again, however, the record indicates that DPS failed to follow its own agreement on December 30, 1981 when it left the child with Mrs. Stuart after being informed that she was seeking a divorce. It can avail DPS nothing in this court to rely on the breach of the agreement on Mrs. Stuart's part when it failed to follow its own standards under the contract. Finally, the department contends that during the period in which Baby Girl Barber remained with Mrs. Stuart after December 30, 1981, it was waiting for some sign of reconciliation between the Stuarts and that when none was forthcoming the decision to terminate the placement became necessary. However, there is absolutely no evidence on the record to indicate that the department ever communicated such an intention to Mrs. Stuart, and there is evidence to show that Mrs. Stuart could have reasonably believed that the department was investigating her for a single-parent adoption.
We conclude, therefore, that the trial court's finding that DPS acted arbitrarily and capriciously in withholding its consent for the adoption of Baby Girl Barber is supported by the evidence and that it did not abuse its discretion in making such order. For this court to find otherwise would be to substitute our judgment for that of the trial court. This, under these circumstances, the law does not allow.
WRIT DENIED.
WRIGHT, P.J., and HOLMES, J., concur.

ON REHEARING
PER CURIAM.
OPINION MODIFIED; APPLICATION FOR REHEARING OVERRULED.
WRIGHT, P.J., and HOLMES, J., concur.
BRADLEY, J., not sitting.