ADAMS, Justice.
R.C. and C.C. petition this Court for a writ of certiorari to review a judgment of the Court of Civil Appeals reversing a judgment of the Circuit Court of Montgomery County, Juvenile Division, that awarded temporary legal custody of a minor child to the petitioners. 592 So.2d 587. We reverse.
In 1982, the petitioners began employment as resident counselors at Group Homes for Children. The petitioners moved to their present place of residence in Elmore County when, two years later, R.C. began work at the Draper Correctional Institute. C.C., however, has continued to work for Group Homes for Children periodically since 1982. Since 1987, she has served as family service representative. Her employment with Group Homes for Children necessitated providing care and counseling for children and families. On November 16, 1987, the petitioners applied to the Department of Human Resources (DHR) for consideration as adoptive parents.
J.P. was born in March 1989. At that time, her mother was incarcerated in a facility of the Alabama Board of Corrections located in Elmore County. The identity of J.P.’s father was unknown. On March 24, 1989, the Circuit Court of Montgomery County, Juvenile Division, awarded temporary legal and physical custody of J.P. to the Montgomery County Department of Human Resources (“DHR”).
Early in 1989, J.P. was placed in the foster care of L.R. and A.R. The petitioners, still seeking a child for adoption, met J.P. in August or September 1989 through their acquaintance with L.R. and A.R. The foster parents allowed the petitioners frequent contacts with J.P., which included overnight babysitting.
On January 12, 1990, the juvenile court terminated all parental rights, granted permanent legal custody of J.P. to the DHR, and directed the DHR to search for a “suitable adoptive placement.” On February 9, 1990, R.C. and C.C., alleging that “deep emotional bonds” had formed with J.P., petitioned the juvenile court for custody. On February 27, 1990, the DHR filed a motion to dismiss the petition. The next day, the petitioners filed a “Motion for Temporary Restraining Order” against further efforts by the DHR to find adoptive parents for J.P. On March 1, 1990, the juvenile court granted the petitioners’ motion and enjoined the DHR from proceeding with the search for adoptive parents pending resolution of the action.
On April 4, 1990, the juvenile court conducted a hearing during which the DHR and the petitioners presented witnesses and oral testimony. The DHR contended that R.C. and C.C. were unsuitable as adoptive parents because they resided within the county in which J.P. was born. The DHR also alleged that the petitioners had disseminated information regarding J.P.’s biological background. The character and fitness of the petitioners as prospective parents were otherwise uncontroverted and were the subject of considerable testimony. On April 19, 1990, the juvenile court, expressly finding “no lawful justification to deny the petitioners’ request for custody,” awarded the petitioners temporary legal and physical custody of J.P. It further ordered the DHR to conduct an investigation of the petitioners’ home and reserved judgment on the issue of permanent custody pending results of the investigation.
*591 The Court of Civil Appeals, reasoning that the judgment of the trial court “effectively frustrate^] a primary purpose for which DHR was designed to serve,” reversed the judgment of the trial court. Pursuant to Ala.R.App.P. 39(k), R.C. and C.C. filed an application with the Court of Civil Appeals for a rehearing, in which they thoroughly supplemented the opinion of the Court of Civil Appeals with additional facts. Following a denial of the application for rehearing, we granted the petition for certiorari review to determine to what extent the refusal of the DHR to consent to the transfer of custody of J.P. to R.C. and C.C., the prospective adoptive couple, operates as a bar to the action taken by the juvenile court.
In Lankford v. Hollingsworth, 283 Ala. 559, 219 So.2d 387 (1969), we addressed the circumstances under which agency consent to adoption was required. In that case, we said:
“Title 27, § 3, Code 1940, provides in pertinent part:
“ ‘No adoption of a minor child shall be permitted without the consent of his parents, but the consent of a parent who has abandoned the child, or who cannot be found, or who is insane or otherwise incapacitated from giving such consent, or who has lost guardianship of the child, through divorce proceedings, or by the order of a juvenile court or court of like jurisdiction, may be dispensed with, and consent may be given by the guardian if there be one, or if there be no guardian by the state department of public welfare. In every such case the court shall cause such further notice to be given to the known kindred of the child as shall appear to be just and practicable. In case of illegitimacy the consent of the mother alone shall suffice except where paternity has been established.
“We construe this statute to mean that the consent of the Department of Pensions and Security (formerly Public Welfare) [now the Department of Human Resources] is required only when the custody of the child has been awarded to that agency, or where there is no parent whose consent is required and the child has no guardian.”
Lankford, 283 Ala. at 561, 219 So.2d at 388. Title 27, § 3, was reenacted in the Code of 1975 as § 26-10-3.
Based on this Court’s construction of the predecessor of § 26-10-3, the Court of Civil Appeals held that the consent of the state agency having permanent custody of the prospective adoptee was jurisdictional. Matter of Roberts, 349 So.2d 1170, 1172 (Ala.Civ.App.1977). Thus, in the absence of the requisite consent the court was without authority “ ‘to proceed to the paramount question of the child’s welfare.’ ” Id. (quoting Davis v. Turner, 337 So.2d 355, 361 (Ala.Civ.App.), cert, denied, 337 So.2d 362 (Ala.1976)). See also Kinkead v. Lee, 509 So.2d 247 (Ala.Civ.App.1987); Ex parte Department of Human Resources, 502 So.2d 771 (Ala.Civ.App.1987); Matter of Roland, 483 So.2d 1366 (Ala.Civ.App.1985); Vice v. May, 441 So.2d 942 (Ala.Civ.App.1983).
The Court of Civil Appeals concluded, however, that the DHR’s discretion was not absolute, holding that the trial court was authorized to grant a petition for a decree of adoption over the objection of the agency if it found that the agency’s refusal. to consent to the adoption was “arbitrary or unreasonable.” Matter of Roberts, 349 So.2d at 1172 (citing Commonwealth, Dep’t of Child Welfare v. Jarboe, 464 S.W.2d 287, 291 (Ky.1971)); see also State Dep’t of Human Resources v. Smith, 567 So.2d 333 (Ala.Civ.App.), cert, denied, 567 So.2d 335 (Ala.1990); Alabama Dep’t of Pensions & Sec. v. Johns, 441 So.2d 947 (Ala.Civ.App.1983); Sanders v. Department of Pensions & Sec., 406 So.2d 948 (Ala.Civ.App.1981); State Dep’t of Pensions & Sec. v. Whitney, 359 So.2d 810 (Ala.Civ.App.1978). Thus, in Ex parte Department of Pensions & Sec., 437 So.2d 544 (Ala.Civ.App.1983), the Court of Civil Appeals denied a petition for writ of mandamus through which the Department of Pensions and Security sought to set aside an order of the trial court based on a finding that the Department had acted arbi *592 trarily in withholding its consent for adoption.
In that case, the agency was notified by the petitioner that she was getting a divorce and was seeking “the department’s aid in proceeding with the adoption as a single parent.” Id. at 547. Despite its expressed policy against single parent adoptions, the agency continued to investigate the petitioner’s circumstances and to consider her as a prospective “adoptive resource.” The agency subsequently refused to consent to the adoption on the ground of its policy against single-parent adoptions. The Court of Civil Appeals concluded that the agency’s refusal supported a finding that it had abandoned its policies and was proceeding in an arbitrary or “ad hoc” manner. Id.
Although this action was proeedurally postured as a “custody case,” the adoption issue pervades every element of the case and ultimately controls the result. This is true, in part, because if R.C. and C.C. had petitioned the court for a judgment of adoption initially, they would have been confronted by the refusal of the DHR and the consequent burden to prove, as a threshold matter, that the consent was being arbitrarily or unreasonably withheld. They may not do indirectly what they could not do directly. We must, therefore, analyze this case as though a judgment of adoption had been sought at the outset.
The appropriateness of the standard propounded by the Court of Civil Appeals, which allows a trial court to grant a petition for adoption without the consent of the DHR only where its consent is arbitrarily or unreasonably withheld, has never been reviewed by this Court. Moreover, while this case was on appeal, the Alabama Legislature enacted the Alabama Adoption Code, Act No. 90-554, 1990 Ala.Acts (codified at Ala. Code 1975, § 26-10A-l to -38 (Supp.1990), in which it expressly articulated the proper standard to be applied to final orders of adoption entered after December 31, 1990. Therefore, although the statute is not directly applicable to this case, we deem it appropriate to consider the legislative standard as a guide in our resolution of this particular case.[1]
The Alabama Adoption Code substantially alters the form and subject matter of § 26-10-3. Notice requirements formerly found in § 26-10-3 are now located in § 26-10A-17. While § 26-10-3 also addressed the necessity of consent and designated the parties from whom consent was required, those subjects are now covered in § 26-10A-7, which provides in pertinent part:
“Consent to the petitioner(s)’ adoption or relinquishment for adoption to the department of human resources or a licensed child placing agency shall be required of the following:
[[Image here]]
“(4) The agency to which the adop-tee has been relinquished or which holds permanent custody and which has placed the adoptee for adoption, except that the court may grant the adoption without the consent of the agency if the adoption is in the best interests of the adoptee and there is a finding that the agency has unreasonably withheld its consent.”
Id. (Emphasis added.)
The standard set forth in § 26-10A-7 appears to differ from that of the Court of Civil Appeals in two important respects. First, § 26-10A-7 omits any specific reference to “arbitrariness.” Consequently, the existence of bona fide agency regulations would be only one factor to be considered by the trial court in its assessment of the reasonableness of the DHR’s nonconsent. Second, unlike the judicial standard requiring the trial judge to make a finding regarding the rationality of the agency’s consent before proceeding to the “paramount question of the child’s welfare,” the statute seems to authorize the trial judge to consider, together, the best interest of the child *593 and the reasonableness of the agency’s refusal. Our consideration of these and other factors leads us to conclude that the judgment of the juvenile court should have been affirmed.
Alleging concerns for the child’s anonymity, the DHR objects to the adoption of J.P. by the petitioners. In this regard, the Court of Civil Appeals stated:
“Testimony revealed that DHR had concluded that the [petitioners] were not suitable as adoptive parents for this particular child. Witnesses for DHR expressed concern that, because the child was born in the same county where the [petitioners] reside, there exists a threat that the child, or others in the community, might discover the identity of the natural mother. There was further testimony that DHR’s policy dictates that adoptive children not be placed with families who reside within the child’s county of origin.
“Moreover, DHR contended that the actions of the [petitioners] demonstrated that they were not capable of protecting the child’s identity due to the fact that several members of the community had apparently been made aware that the child was a foster child and that the parental rights of her natural parents had been terminated.”
The findings of the trial judge, however, did not support the DHR’s contentions. In the order transferring custody to the petitioners, the trial judge stated:
“The evidence presented to the Court tends to show that there is no reason to believe that J.P.’s mother presently lives within two hundred miles of J.P. or the Petitioners. The evidence also reveals that the foster parents and the Petitioners have not shared with their family members, co-employees, or any other persons such information as could recall J.P.’s sensitive background. In fact, it appears that the foster parents and the Petitioners know little or nothing about J.P.’s background or biological identity except her surname, date of birth and medicaid number. This information would, of course, probably be made available to an adopting couple by DHR through normal procedures. J.P.’s biological mother has had no contact with J.P. since birth and J.P.’s father is unknown. It is unlikely that J.P. would ever be identified physically for her biological origin.
“There could be some reason to believe that certain persons acquainted with J.P.’s mother might be aware of J.P.’s birthdate and the fact that J.P. was immediately taken into foster care and has been since in care. Whether such persons might ever encounter J.P. and know of her birthdate or foster care placement, is unknown by the Court but the risk does not seem to be significant.”
The judge’s findings were based on oral testimony, including that of Mary Greer, adoption consultant for the State Department of Human Resources, who testified that she had “reason to believe” that J.P. had no family or relatives in the area of the petitioners’ residence. Andy Jackson, a social worker employed by the Montgomery County Department of Human Resources in the Child Protective Services Unit, testified that J.P.’s biological mother had apparently been released from confinement and was living in north Alabama.
The trial judge made no express finding that the consent of the DHR was arbitrarily withheld before he proceeded to consider the best interest of the child. He did find, however, that there were “reasons why the DHR policy need not be strictly followed in this case.” Regarding the qualifications of the petitioners, the judge’s order stated that “[t]heir suitability and fitness as adoptive parents is not in controversy nor is their character. The Petitioners appear to be an excellent resource for adoption.” Indeed, there was ample testimony to that effect.
On cross-examination, Mary Greer conceded: “I have no reason to think that the [petitioners] are not fine folks ... and may be a good resource, you know, for another, for an adoptive child.” Craig Spiro, a social worker employed by the Autauga County Department of Human Resources, opined that the petitioners would be “an *594 excellent [adoptive] resource.” He also testified that the petitioners “would provide a loving home for the child.” George Holy, executive director of Group Homes for Children, based on his observations as C.C.’s employer, described her as “great with kids, ... loving and caring.” He testified that J.P. “would have a nurturing home if she went with C.C.].”
Although we agree with the principle that the DHR must be given a substantial field of operation in its decisions regarding adoptive resources, slavish adherence in every case to written policies does not necessarily serve the best interests of children. For all that appears, J.P.’s only claim to Elmore County as the county of her origin rests upon the mere fortuity of her mother’s incarceration there. That the DHR had a bona fide policy against placing a child for adoption in the county of the child’s origin was merely one fact to be considered by the juvenile court in determining the best interest of the child.
Furthermore, the court’s factual findings based on testimony presented ore tenus regarding alleged threats to the adoptee’s anonymity, upon which the DHR based its reasons for nonconsent, are “presumed to be correct and will not be disturbed on appeal unless palpably erroneous.” Lankford v. Hollingsworth, 283 Ala. 559, 562, 219 So.2d 387, 390 (1969); see also McCombs v. Shields, 497 So.2d 149 (Ala.Civ.App.1986); In re Miller, 473 So.2d 1069 (Ala.Civ.App.1985). The evidence supported a finding that the DHR’s noncon-sent was unreasonable in light of all the circumstances of this case.
The judgment of the juvenile court is not, as the DHR contends, inconsistent with Ala.Code 1975, § 26-18-8(1), which authorizes the DHR, pursuant to an order of the court transferring to that agency legal custody of a dependent child, “to make permanent plans for the child, including the authority to place for adoption and consent to adoption.” Section 26-18-8(1) must be read in pari materia with § 26-10A-7(4), which sets the perimeters of the agency’s authority to withhold its consent. For the foregoing reasons, the judgment of the Court of Civil Appeals is reversed and the cause is remanded to that court.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, HOUSTON, STEAGALL and KENNEDY, JJ„ concur.
INGRAM, J., recused.

. Not only did the judge’s order predate the effective date of the statute, but, technically, there was no petition for adoption before the juvenile court. Therefore, because of the peculiar procedural posture of this case, our observations regarding the meaning and effect of § 26-10A-7 are restricted to this case only.