SAM A. BEATTY, Retired Justice.
R.L.T. and P.T. appeal from a probate court judgment denying their petition to adopt K.M., entered after the State Department of Human Resources (“DHR”) had refused to consent to the adoption. The trial court found that DHR had not arbitrarily or unreasonably withheld its consent. We affirm.
*863 R.L.T. and P.T. are licensed foster parents, and have served in that capacity for DHR for approximately 20 years. They have one biological child and five adopted children, and they have been foster parents for many other children. At the time of the hearing, six foster children were living in their home. R.L.T. is a 67-year-old minister, and P.T. is a 65-year-old homemaker.
In 1990, DHR contacted the foster parents about taking a three-day-old baby, K.M.; this child lived in their home for the next three years, except for one month when he lived with his biological mother. The foster parents testified that K.M. was a “sickly” infant who required extra time and attention, but that they had no problems in providing the care the child needed. Both testified that they had become very attached to the child, loved him very much, and wanted to adopt him. The foster parents did not consider their ages to be a problem in adopting and rearing a young child, and both considered themselves to be in good health.
In working to find a permanent placement for K.M., DHR was also working with the child’s biological mother. She and the foster mother were acquainted with each other. When the child was approximately two years old, the biological mother decided that she would be willing to relinquish her parental rights if the foster parents were allowed to adopt the child. The Lauderdale County Circuit Court ordered the foster parents to proceed with an independent adoption. DHR attempted to assist the foster parents with the necessary paperwork and also referred them to a lawyer.
DHR’s social worker testified that when she brought the paperwork to the foster parents for their signature, however, they raised the issue of subsidy pay. The Alabama Subsidized Adoption Act, § 26-10-20 et seq., Ala.Code 1975, provides a financial subsidy to facilitate the adoption of children who have special needs or who are hard to place for adoption. The foster parents earlier had received a subsidy when they adopted a group of siblings. The social worker explained to the foster parents that subsidy pay is not available in an independent adoption. She further testified that P.T. told her that they needed a subsidy for this child because he had had so many medical problems. The social worker explained to the foster parents that if they did not proceed with the independent adoption, then DHR would obtain permanent custody of the child, after which DHR would decide where to place the child for adoption. The social worker stated that she told the foster parents they would be considered as potential adoptive parents in that case, but that the decision would not be up to her and that she could not guarantee that they would be allowed to adopt the child. She testified that R.L.T. wanted to proceed with the independent adoption, but that P.T. did not. P.T. testified that although she told the social worker she thought they would need the subsidy, she also told her that if they could not get the subsidy, they still wanted the child.
In November 1992, DHR notified the foster parents by letter that it would petition the Lauderdale County Circuit Court to terminate the parental rights of KM.’s biological parents, and that upon being awarded permanent custody, it would decide upon an adoption placement for the child and that the placement might not be in their favor. The foster parents neither responded to DHR nor proceeded with the independent adoption, although the record reflects that R.L.T. did not know about the letter for some time. DHR obtained permanent custody of K.M. in May 1993, and in June 1993, it advised the foster parents that another couple had been selected as an adoptive placement for the child. DHR removed the child from the foster parents’ home in September 1993 and placed him with the prospective adoptive parents in Pike County, where he has lived since then. The foster parents filed a petition in the Probate Court of Pike County seeking to adopt the child, but DHR refused its consent.
Both the social worker who worked closely with the foster parents and the adoption consultant from DHR’s state office testified about DHR’s reasons for denying its consent to K.M.’s adoption by the foster parents. They said DHR recognized the bond that had developed between the foster parents and the child, but, they said, negative factors outweighed that bond. They said the differ *864 ence in ages between the foster parents and the child was a major consideration, and that DHR was concerned about allowing an adoption in which the parents would be in their eighties when the child was a teenager. In addition, both the social worker and the adoption consultant were concerned about what they considered the foster parents’ failure to discipline the child. Both observed that although he was obviously well-loved, he was more like a pet to the household of adults and older children. They observed that he was allowed to do as he pleased, still drank from a bottle and wore a diaper at age three, and had very little structure in his life. DHR decided that the child’s best interests would be served by placing him with a younger adoptive couple who DHR thought would provide discipline and training for him during his childhood years and who would have less difficulty handling a teenager than parents in their eighties were likely to have. In making that judgment, DHR considered problems the foster parents had recently with their youngest adopted child. DHR was also concerned that P.T.’s insistence upon the adoption subsidy might indicate that the family was not financially able to adopt another child.
The foster parents first contend that the probate court erred in denying their petition for adoption because, they argue, DHR unreasonably withheld its consent to their adoption of K.M. Where the parental rights of biological parents have been terminated and permanent custody of the child has been granted to DHR, DHR’s consent to adoption is a prerequisite to the probate court’s consideration of the child’s adoption. In re Roland, 483 So.2d 1366, 1368 (Ala.Civ.App.1985). Section 26-10A-7(4), Ala.Code 1975, requires consent to an adoption from an agency “which holds permanent custody and which has placed the adoptee for adoption, except that the court may grant the adoption without the consent of the agency if the adoption is in the best interests of the adoptee and there is a finding that the agency has unreasonably withheld its consent.” Whether DHR’s consent was unreasonably withheld is a question of fact, and the burden of proof is on the party asserting that contention. Roland, 483 So.2d at 1368. In a proceeding in which evidence is presented ore tenus, the trial court has the duty to weigh the evidence presented and to judge its credibility, especially in a case in which much of the evidence is conflicting. In re Miller, 473 So.2d 1069, 1071 (Ala.Civ.App.1985). As in any case governed by the ore tenus rule, the trial court’s decision is presumed to be correct and will not be disturbed on appeal unless it is found to be plainly and palpably wrong or unjust. Crowe v. Crowe, 602 So.2d 441, 442 (Ala.Civ.App.1992); Miller, 473 So.2d at 1070.
The foster parents argue that they met their burden of proving that DHR unreasonably withheld its consent. They argue that DHR’s concerns about their ability to handle the child in the future are speculative, and that their love for the child and the bond they had forged with him should have been the paramount considerations in his placement. They point out that they were the only parents K.M. had ever known and that he called them “Mommy” and “Daddy.” They also argue that many of DHR’s concerns were the result of misunderstandings between P.T. and the social worker. The foster parents acknowledge that their youngest adopted child has recently gotten into trouble, but they point out that no parent can always keep a teenager out of trouble, and they note that they have successfully reared five other children and have successfully served as foster parents to many more.
DHR contends that it withheld its consent to the foster parents’ adoption of K.M. based upon its evaluation of what it considered to be the best interests of the child. DHR maintains that it considers many of the same factors used by trial courts in determining the best interests of a child. *865 Johnson v. Sparks, 437 So.2d 1308, 1309 (Ala.Civ.App.1983). DHR argues that even though § 26-10-5(2), Ala.Code 1975, prohibits it from preventing an adoption solely on the basis of age, age is a factor that must be considered in determining a child’s best interests in an adoptive placement, and that the advanced age of the foster parents was an appropriate concern in this case. DHR also argues that the lack of discipline provided for K.M., together with the recent problems of the foster parents’ youngest child, indicated that during his teenage years the foster parents would have difficulties parenting K.M. that they did not experience during his infancy and early childhood.
*864 “[These factors include] the sex and age of the child, the child’s emotional, social, moral, material, and educational needs, the parties’ age, character, stability, health, and home environments, the interpersonal relationship between the child and the parties, the effect on the child of a disruption of the custody arrangement, and the parties’ success in raising other children.”
*865 The foster parents had an opportunity to proceed with an independent adoption of this child, but did not do so. Because they did not, Alabama law placed the responsibility for making adoption placement decisions with DHR. Although we recognize the pain suffered by the foster parents as a result of DHR’s refusal to consent to their adoption of the child, we also recognize DHR’s efforts to make a decision based upon what it found to be the best interests of the child. The trial court decided, after considering the testimony and evidence presented to it, that DHR’s refusal to consent to the foster parents’ adoption of K.M. was not unreasonable. The ore tenus rule does not allow this court to reverse that decision unless we are convinced that it was plainly and palpably wrong. We cannot say that the trial court was plainly and palpably wrong in this case. See Ex parte Murphy, 670 So.2d 51 (Ala.1995) (sound reasoning is behind the ore tenus standard, which recognizes the trial court’s unique position to observe the parties and to hear the testimony).
The foster parents also contend that the trial court erred when it considered whether DHR arbitrarily withheld its consent in this case. They cite Ex parte R.C., 592 So.2d 589 (Ala.1991), in which our supreme court determined that § 26-10A-7, Ala.Code 1975, no longer requires a trial court to find that DHR acted arbitrarily, but may proceed directly to considering the best interests of the child and the reasonableness of the agency’s refusal to consent to adoption. We find no error in the trial court’s alternative conclusions that DHR did not “arbitrarily or unreasonably withhold its consent” (emphasis added).
Let the judgment be affirmed.
The foregoing opinion was prepared by SAM A. BEATTY, Retired Justice, Supreme Court of Alabama, while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
AFFIRMED.
All the judges concur.