674 So.2d 535 (1995)
T.S.
v.
J.P. and C.P.
2940169.
Court of Civil Appeals of Alabama.
May 12, 1995.
Rehearing Denied June 30, 1995.
Certiorari Quashed March 15, 1996.
*536 Gary S. Smallwood, Legal Services Corporation, Anniston, for appellant.
Christopher M. Hopkins of Campbell & Hopkins, Anniston, for appellees.
William Prendergast and Coleman Campbell, Asst. Attys. Gen., Department of Human Resources, for amicus curiae State of Alabama.
Alabama Supreme Court 1941552.
THIGPEN, Judge.
In April 1993, J.P. and C.P. (petitioners) filed a petition in the Probate Court of Calhoun County, seeking to adopt J.S., an unrelated minor child. The petitioners alleged that J.S. had been in their custody since November 1991, when the biological mother, who is a friend of the petitioners' daughter, placed J.S. with them while she devoted her efforts to taking better care of herself. They further alleged that it was initially anticipated that placement of J.S. with the petitioners was temporary; however, it became apparent that they were J.S.'s only "real family" and means of support. Pursuant to the request of the petitioners, the probate court entered an interlocutory order granting J.S.'s custody to the petitioners.
In May 1993, the biological mother filed a motion contesting the adoption, alleging, among other things, that she had not consented to the adoption, and that the petitioner had refused her request for J.S. to be returned to her and her offer for monetary support for J.S. The mother's motion to transfer the matter to the Juvenile Division of the Calhoun County Family Court, pursuant to Ala.Code 1975, § 26-10A-24(e), was granted, and a guardian ad litem was appointed for J.S. The father was served by publication, after other methods of service failed, but he never appeared.
In October 1994, following ore tenus proceedings, the trial court entered an order finding that it was in the best interest of the minor child to terminate the parental rights of both parents in order to grant the adoption, and it entered a final order accordingly. The mother filed a post-judgment motion, contending that the trial court's order erroneously applied the "best interest" standard, when the correct, applicable standard, she contends, was the "termination of parental rights standard ... as used in juvenile court under the factors set out in the appellate cases for termination of parental rights." The mother also contended that "the Adoption Code as applied is vague and violates due process." Her post-judgment motion was denied, and she appealed.
The mother raises two issues on appeal: (1) whether Ala.Code 1975, § 26-10A-1 et seq., the Alabama Adoption Code, violates the due process and equal protection guarantees of the Fourteenth Amendment to the U.S. Constitution in its application when parental rights are terminated; and (2) whether the trial court erred in terminating parental rights without applying the factors set forth in Ala.Code 1975, § 26-18-7.
A fundamental rule of statutory construction is that "all statutes relating to the same subject or having the same general purpose must be read together to constitute one law." Florence v. Williams, 439 So.2d 83, 87 (Ala.1983). A court construing a statute must look not only to the language of the statute, but also to the "purpose and object of the enactment, and its relation to other laws and conditions which may arise under its provisions." Siegelman v. Folmar, 432 So.2d 1246, 1249 (Ala.1983). Additionally, in construing a statute, the court's duty is to "ascertain and effectuate the legislative intent expressed in the statute, which may be gleaned from the language used, the reason and necessity for the act, and the purpose *537 sought to be obtained." Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc., 611 So.2d 238, 248 (Ala.1992). Furthermore, if a statute is susceptible to two constructions, and one is workable and fair but the other is unworkable and unjust, the court assumes that the legislature intended that which is workable and fair. Ex parte Hayes, 405 So.2d 366 (Ala.1981). It follows, therefore, that Ala.Code 1975, § 26-10A-1 et seq., the Alabama Adoption Code (AAC), must be read in pari materia with Ala.Code 1975, § 26-18-1 et seq., the 1984 Child Protection Act (CPA). See Ex parte R.C., 592 So.2d 589 (Ala.1991).
The mother argues that the AAC violates, among other things, a parent's due process rights when it is applied to terminate parental rights, because, she says, it provides no guidelines or standards for the trial court. Our research indicates that our legislature did not intend for only the AAC to control when an adoption proceeding also involves the termination of parental rights. While the AAC and the CPA may not be models of clarity in legislative drafting and may appear complex, when they are read in pari materia, a workable construction can be applied. Ala.Code 1975, § 26-10A-3, provides the probate court with original jurisdiction over adoption proceedings; it further states:
"If any party whose consent is required fails to consent or is unable to consent, the proceeding will be transferred to the court having jurisdiction over juvenile matters for the limited purpose of termination of parental rights. The provisions of this chapter shall be applicable to proceedings in the court having jurisdiction over juvenile matters."
(Emphasis added.)
In the CPA, our legislature clearly provided guidelines and standards for terminating parental rights based upon clear and convincing evidence. Ala.Code 1975, § 26-18-7. Mindful of the serious nature of cases involving the termination of parental rights and the need to comply with the requirements of due process, our Supreme Court established a two-pronged test to be applied. Ex parte Beasley, 564 So.2d 950 (Ala.1990). The court must determine whether grounds for termination exist, including, but not limited to, those specifically listed in § 26-18-7, and must also determine whether all viable alternatives to the termination of parental rights have been considered. Beasley, 564 So.2d 950. Paramount in a determination regarding the termination of parental rights is a consideration of the child's best interest. Beasley, 564 So.2d 950. Furthermore, where the State or a nonparent seeks to terminate parental rights, the court must find that the child is dependent. Beasley, 564 So.2d 950. Additionally, we note that the United States Supreme Court has held that, in a termination of parental rights proceeding, a "clear and convincing evidence" standard of proof satisfies the requirements of due process, while a lesser standard does not. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).
A construction of the AAC that usurps and overrides the CPA, and that calls for the application of a lesser or different standard, is an unworkable, unjust, and unreasonable interpretation. More importantly, the imposition of a lesser standard would clearly be unconstitutional. Santosky, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599.
Accordingly, we conclude that, based upon the fundamental rules of statutory construction, our legislature intended for the AAC and the CPA, considered in pari materia, to provide the mandated constitutional safeguards for the rights of parties whose parental rights are sought to be terminated. To assume that our legislature intended for the "best interest" standard to be applied by the juvenile court in terminating parental rights in an adoption proceeding would be unworkable and unjust; another construction that is workable and fair exists. Furthermore, to assume that the legislature intended for the AAC and the CPA to exist independently of each other, each in a vacuum, with no intermingling, dependence, or interaction, would indicate that our legislature has intentionally defied the mandate of the United States Supreme Court requiring a "clear and convincing" standard of proof. Although we may agree with the mother's assertions that the AAC is not a model of clarity, our duty is to ascertain and effectuate the legislative intent *538 expressed in the language used, the reason and necessity for the act, and the purpose sought to be obtained.
Therefore, we find that the AAC, when read in pari materia with the CPA, is not unconstitutional when applied in terminating parental rights in an adoption proceeding. The CPA clearly provides the standards to be applied by the court in determining whether to terminate parental rights, and nothing limits the application of the CPA only to parental rights termination cases originating from separate and independent actions in the juvenile court or apart from adoption proceedings. No substantive provisions for terminating parental rights exist in the AAC, because the substantive provisions are provided in the CPA.
The mother persuasively argues that the trial court erred in terminating her parental rights without following the applicable provisions of the CPA, specifically § 26-18-7, in that it used an improper standard. While the best interest of the child is always a paramount concern in such cases, the trial court erred in applying the "best interest" standard to the question regarding the termination of the mother's parental rights. The termination of parental rights standard provided by the CPA, and the case law interpreting the CPA, should have been applied. Accordingly, the judgment must be reversed and the cause remanded for the trial court to apply the proper standard to reach a decision.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and YATES and CRAWLEY, JJ., concur.
MONROE, J., dissents.
MONROE, Judge, dissenting.
It is clear from the record that the trial judge applied the appropriate standard in concluding that the parental rights of T.S., the birth mother, should be terminated and that J.P. and C.P. should be allowed to adopt J.S. Therefore, I respectfully dissent.
The underlying action was a petition for adoption. J.P. and C.P. sought to adopt J.S., who had been living with them since he was 15 months old. After ore tenus proceedings, the trial court found that the birth mother had given implied consent to the adoption, had relinquished her parental rights, or had abandoned J.S., and granted the petitioners' request for adoption. The birth mother appeals, claiming that she did not consent to the adoption and that her parental rights were improperly terminated.
Parental rights are necessarily terminated during an adoption proceeding either by consent, express or implied, or by judicial termination in compliance with the Child Protection Act (CPA). Ala.Code 1975, §§ 26-10A-9(2), 26-18-7.
The Alabama Adoption Code (AAC) defines the "consent" or "relinquishment" necessary to terminate parental rights as part of the adoption process, which must be:
"A consent or relinquishment required by section 26-10A-7 may be implied by any of the following acts of a parent:
". . . .
"(2) Knowingly leaving the adoptee with others without provision for support and without communication, or not otherwise maintaining a significant parental relationship with the adoptee for a period of six months...."
Ala.Code 1975, § 26-10A-9(2).
Additionally, the implied consent or relinquishment, which would obviate the need for the birth mother's expressed consent, may be found when the birth mother abandons her child. Gillespie v. Bailey, 397 So.2d 130 (Ala.Civ.App.1980); cert. denied, Ex parte Gillespie, 397 So.2d 133 (Ala.1981); Ala.Code 1975, § 26-10A-2(1).
To prove abandonment in an adoption case, the evidence must show that the parent has undertaken toward the child a course of conduct that would imply a conscious disregard or indifference to the parental obligations owed to the child. Vice v. May, 441 So.2d 942 (Ala.Civ.App.1983); Gillespie v. Bailey, 397 So.2d 130 (Ala.Civ.App.1980); Thomas v. Culpepper, 356 So.2d 656 (Ala.Civ.App.1978). The voluntary acts of a parent resulting in a prolonged separation from the child and an inability to fulfill parental duties are material *539 evidence to be considered in determining whether the parent had an intent and purpose to abandon. Thomas, 356 So.2d 656. One may not rely on rare instances of contact with, and support of, the minor to assert "parental rights and disregard concurrent parental obligations." Id. at 659.
It is obvious from the record that the birth mother intentionally and voluntarily relinquished her parental rights to the petitioners. She left J.S. with the petitioners when he was 15 months old, and for 4 years she did not provide support or engage in any duties of parenthood.
In 1991, she said she wanted her son, and the petitioners returned J.S. to her. Then, within one week of getting J.S., she voluntarily returned him to the petitioners, who again assumed their role as J.S.'s parents. In 1993, when J.S. was over five years old, the birth mother, for the first time, asserted her rights as a parent. The birth mother's actions provide clear and convincing evidence that she abandoned J.S.
Applying the law to the facts in this case, termination of the birth mother's parental rights was proper. Also, it should be noted that the birth father, who has had no contact with J.S., was notified of the adoption proceedings, and failed to appear.
To reverse and remand solely because the trial judge failed to use some "magic words" for terminating the birth mother's parental rights is to put form over substance. We have previously held that detailed findings in a termination proceeding are helpful but not required. M.J.G.L. v. State Dep't of Human Resources, 587 So.2d 1004 (Ala.Civ.App. 1991); A.P. v. State Dep't of Human Resources, 624 So.2d 593 (Ala.Civ.App.1993).
Needless to say, I would affirm the trial court's termination of the birth mother's parental rights and the judgment granting the adoption of J.S. by the petitioners. To do otherwise would substitute this court's judgment for that of the trial court. This the law does not and should not permit.